[No. 29650-4-III.  Division Three.  June 5, 2012.]

*In the Matter of the Marriage of* JOE HARMON BOWEN, *Respondent*, and AMY ANN BOWEN, *Appellant*.

*Gary R. Stenzel* (of *Gary R. Stenzel PS*), for appellant.
*Kenneth H. Kato*, for respondent.

¶1 SIDDOWAY, J. — Amy Bowen appeals the decree entered in the proceeding dissolving her marriage to Joe Bowen, assigning error to the trial court's finding that Mr. Bowen's military disability retirement pay was not before the court for distribution, its unequal division of the parties' marital assets in favor of Mr. Bowen, and its imputation of income to Ms. Bowen when calculating child support payments. Finding no error or abuse of discretion, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2 Amy and Joe Bowen married in September 1996. Ms. Bowen obtained her teaching credentials in 1998 and worked as an elementary school teacher until 2004, when

the first of the couple's two children was born. Mr. Bowen served in the United States Air Force from 1993 until November 2008, when he received a disability discharge. After being discharged, the couple moved from North Dakota to Spangle, Washington, so that Mr. Bowen could pursue civilian employment at Fairchild Air Force Base. Funding for this position lapsed in July 2010, leaving Mr. Bowen unemployed.

¶3 Mr. Bowen filed a petition for dissolution in August 2009, and a final decree was entered in December 2010. Both parties were age 35 at the time of trial, and both were searching for employment. While much of the trial focused on parenting plan issues and whether Ms. Bowen would be allowed to relocate to Medford, Oregon, with the children, this appeal centers on the trial court's property division and child support award.

¶4 At the time of trial, the parties came before the court with approximately $20,000 in community liquid assets and $45,000 in community personal property, which largely consisted of two vehicles, home furnishings, and power tools. The trial court valued and distributed each item of personal property on the record. Taking into consideration advances to the parties approved during the proceedings and the court's award of community property in the decree, the parties' community property was ultimately distributed and divided as follows:

| Item | Value | Wife | Husband |
| --- | --- | --- | --- |
| Advances: | | | |
| Trust account | $14,146.94 | $10,646.94 | $3,500.00 |
| Final Award: | | | |
| Misc. personal property | 25,785.00 | 13,475.00 | 12,310.00 |
| 2004 Silverado truck | 20,000.00 | | 20,000.00 |
| Thrift savings | 12,379.00 | 6,189.50 | 6,189.50 |
| Trust account | 7,478.00 | 3,739.00 | 3,739.00 |
| TOTAL: | $79,788.94 | $34,050.44 | $45,738.50 |

The court assigned $1,837.50 in separate liabilities to Mr. Bowen and $2,165.00 to Ms. Bowen, and made each party responsible for their respective attorney fees.

¶5 The court had ordered Mr. Bowen to pay monthly amounts of $1,400.00 in maintenance and $600.00 in child support during the pendency of the action. In entering the decree, it ordered Mr. Bowen to pay a reduced amount of monthly maintenance ($400.00) for another year. In calculating Mr. Bowen's monthly child support payments for the final child support order, the court imputed $2,693.00 in monthly income to Ms. Bowen after finding her to be voluntarily unemployed; on that basis, it imposed a standard calculation payment of $637.67 per month on Mr. Bowen.

¶6 The trial court did not explain its reasoning for dividing the property as it did, either during its oral ruling or by later entering supportive findings of fact. Each party retained their own separate property, which was modest in comparison to the community estate.

¶7 A principal point of contention in dividing the property was whether Mr. Bowen's military disability retirement pay was before the court for distribution. Due to an ongoing medical condition, Mr. Bowen was deemed permanently disability retired in November 2008 and discharged with a 30 percent disability rating. His January 2010 retiree account statement admitted into evidence reflected that payment of $1,140.00 in gross retirement pay was made to him; that $475.00 of that payment was waived so that he may receive dollar-for-dollar, tax-free Veterans Affairs (VA) disability compensation; that $65.04 was taken out for a survivor benefit plan; and that the remaining $599.96 was taxable income.

¶8 When questioned about his financial entitlement in light of the disability separation, Mr. Bowen testified as follows:

Q.   . . . [W]hat does [30-percent disability separation] mean financially to you?

A. Financially I lost a retirement. I would have been given a 50-percent retirement. Because I did not get a retirement, I got a disability, I only receive 30-percent disability separation.

Q. Okay. How many years had you served in the military at the time that you were separated from the service?

A. I served 15 years, 3 months, to the day.

Q. And what requirement, if any, is there to receive retirement?

A. You have to continue service through 20 years to the day or more. You do not qualify for a retirement certificate, a president of the United States certificate, or a retirement ceremony, nor do you get a flag.

Q. How much do you receive in the way of this disability payment?

A. The disability payment is based on 30 percent at the rank I held at how many years. It equals $1,140 and some cents total before anything is pulled.

Q. And what, if anything, is taken from that?

A. From that they subtract SBP, Survivor Benefit Program plan; they subtract Delta Dental; they subtract two life insurances; and they subtract TRICARE Insurance for medical insurance; and they also subtract out of that, from the VA side which is a complete separate entity from the Air Force disability, 30-percent disability with the Veteran's Administration which is considered tax free.

2 Report of Proceedings (RP) (July 13, 2010) at 240-42. He testified that everything he received from the government was disability pay, as opposed to disposable retirement pay. Ms. Bowen took issue with Mr. Bowen's characterization of this benefit, arguing that the court had the power to divide the non-VA portion between the parties.

¶9 The court determined Mr. Bowen's retirement income was all disability pay and consequently indivisible:

Here's what I'm doing now on that. I'm remembering the testimony of Mr. Bowen. To the extent that, since he was found

to be disabled, he's then disqualified from military retirement. So that puts him in the category where he can't get that guaranteed income as a serviceperson who fulfills his years of service in order to qualify for that retirement. So I'm finding it's all beyond the reach of the Court. So it's not awardable.

4 RP (Aug. 12, 2010) at 749. Its written findings were in accord. Ms. Bowen challenged the trial court's decision on disposition of the disability retirement pay in a motion for reconsideration, which the court denied.

¶10 Ms. Bowen appeals.

## ANALYSIS

¶11 Ms. Bowen appeals the trial court's determination that Mr. Bowen's military disability retirement pay was not divisible, its overall property distribution, and its decision to impute income to her when calculating child support.

■■ ¶12 The trial court has broad discretion in distributing property in a dissolution action. *In re Marriage of Gillespie*, 89 Wn. App. 390, 398, 948 P.2d 1338 (1997). We review child support orders for abuse of discretion, although bearing in mind that a court must impute income to a parent who is voluntarily unemployed in order to prevent a parent from avoiding her or his child support obligation. RCW 26.19.071(6); *In re Marriage of Griffin*, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). Trial court decisions in a dissolution action will seldom be changed upon appeal—the spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court. *In re Marriage of Landry*, 103 Wn.2d 807, 809-10, 699 P.2d 214 (1985).

¶13 A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Littlefield*, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). A decision is manifestly unreasonable "if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it

is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard." *Id.* at 47.

¶14 Ms. Bowen takes issue with the trial court's determination that Mr. Bowen's military disability retirement pay was not subject to distribution. She contends that while his VA disability payments are not divisible, the balance of his retirement pay was improperly excluded by the court as disability pay.

¶15 Other state courts have recognized that the issue of whether disability retirement benefits are apportionable is a mixed question of law and fact, subject to de novo review. *See, e.g., Marriage of Davies v. Beres*, 224 Ariz. 560, 562-63, 233 P.3d 1139 (Ct. App. 2010). This is an appropriate way to characterize our review, given that the task at hand involves taking undisputed evidentiary facts and applying a statutory scheme. *See Quinn v. Cherry Lane Auto Plaza, Inc.*, 153 Wn. App. 710, 725, 225 P.3d 266 (2009) (Schultheis, C.J., dissenting) (recognizing that "[t]his court reviews de novo the trial court's interpretation and application of a statute to undisputed facts").

¶16 State courts may divide military retired pay only as authorized by the Uniformed Services Former Spouses' Protection Act (USFSPA). 10 U.S.C. § 1408(c)(1); *Mansell v. Mansell*, 490 U.S. 581, 589, 109 S. Ct. 2023, 104 L. Ed. 2d 675 (1989). Under the USFSPA, a dissolution court may treat military retirement pay as marital property subject to division in accordance with the law of the jurisdiction. 10 U.S.C. § 1408(c)(1). However, only "disposable retired pay" may be apportioned by a divorce court. 10 U.S.C. § 1408(c)(1); *Mansell*, 490 U.S. at 585-86; *In re Marriage of Perkins*, 107 Wn. App. 313, 320, 26 P.3d 989 (2001). "Disposable retired pay" is defined to exclude any retired pay that a disability retiree has waived in order to collect veteran's disability benefits. 10 U.S.C. § 1408(a)(4)(B). In order to prevent double dipping, a disability retiree

collecting veteran's disability benefits is required to waive an equal amount of his or her retired pay, but because the former benefits are nontaxable, the retiree increases his or her after-tax benefits by collecting veteran's benefits and waiving retired pay. *Mansell*, 490 U.S. at 583; 38 U.S.C. § 5305. Ms. Bowen recognizes that the waived retired pay amount is deducted in computing disposable retired pay.

¶17 But "disposable retired pay" is reduced by other amounts as well, including, under 10 U.S.C. § 1408(a)(4)(C), amounts which,

> in the case of a member entitled to retired pay under chapter 61 of this title, are equal to the amount of retired pay of the member under that chapter computed using the percentage of the member's disability on the date when the member was retired (or the date on which the member's name was placed on the temporary disability retired list).

Chapter 61 of Title 10 of the United States Code (10 U.S.C. §§ 1201-1222) governs retirement or separation from the military for physical disability. It provides that retired pay is computed under § 1401 of Title 10, which in turn provides two ways to compute retired pay. One is to compute the pay using the percentage of disability on the date of retirement. *See* 10 U.S.C. § 1401(a). The other way to compute retired pay is to take the member's retired base pay and multiply it by a service percent multiplier, which in the case of Mr. Bowen, whose service was active duty, would be 2.5 percent for each year of active duty service. *Id.* The method of computation is at the service member's choice. *Id.* The percentage of disability method of computation would tend to be more favorable as the disability becomes more serious, the member has fewer years of service, or both. The 2.5 percent method, by contrast, would tend to be more favorable for longer-serving members, members having lesser disabilities, or both. It would appear that the reason for allowing a disability retiree to reduce disposable retired pay by the amount of retired pay computed using his or her

disability percentage is because it tends to reflect core disability compensation, without the "kicker" for length of service reflected in the 2.5 percent method.[1]

¶18 The parties did not carefully frame this issue for the trial court. Neither specifically discussed the USFSPA, Mr. Bowen's retired pay options and choice, or even how much if any of Mr. Bowen's retired pay could be considered disposable retired pay. Instead, Ms. Bowen argued in a motion for reconsideration below, as she does on appeal, that the portion of Mr. Bowen's pension not waived to receive VA disability benefits is disposable retired pay and therefore divisible. This argument considers only the retired pay waiver deduction at 10 U.S.C. § 1408(a)(4)(B) and completely ignores the deduction for core disability-related retired pay provided at § 1408(a)(4)(C).

¶19 Ms. Bowen also argues, inconsistently, that "70% [of Mr. Bowen's pension] should have been distributed and 30% not," since he was found to be 30 percent disabled. Br. of Appellant at 13. But this argument ignores how disability retirement benefits are calculated, as evidenced by the fact that Mr. Bowen's VA waiver alone is more than 40 percent of his total payment. She also argues incorrectly that because all disability pay is exempt from taxation and Mr. Bowen's pension is partially taxed, the taxable portion is not disability pay. Only disability benefits received from the VA are tax free (hence the need for a waiver), 38 U.S.C. § 5301. The USFSPA's definition of "disposable retired pay" is not concerned with whether the benefits are taxed and is reduced by taxable components. She offers other rationales on appeal for disputing Mr. Bowen's characterization of his

---

[1] At least one other jurisdiction has recognized that a disability retiree's disposable retired pay excludes the percentage that the retiree receives or would have received using his or her disability percentage. *See In re Marriage of Wherrell*, 274 Kan. 984, 995-96, 58 P.3d 734 (2002) (concluding that chapter 61 disability retirees may potentially receive both disability and retirement pay, and that portion of the benefit based upon disability is excluded from the definition of "disposable retired pay" under 10 U.S.C. § 1408(a)(4)(C)).

retired pay that were not raised in the trial court and that we will not consider. RAP 2.5(a).

¶20 Mr. Bowen testified that his total benefits received were "based on 30 percent at the rank I held at how many years" and that "[a]bsolutely none" of his benefits could be considered disposable retired pay under the USFSPA. 2 RP (July 13, 2010) at 241, 308. Ms. Bowen offered no evidence from which to verify or disprove his testimony. While it is possible that Mr. Bowen misunderstood or misrepresented how his payments were calculated, there is no evidence in the record that contradicts his testimony and the trial court found him to be a credible witness.

¶21 The record would be insufficient to support the trial court's ruling if it were not for Mr. Bowen's testimony regarding the nature of his benefits. Since he effectively testified that his benefits were calculated using his percentage of disability, it was proper to conclude that, pursuant to 10 U.S.C. § 1408(a)(4), all of his retired pay should be subtracted in calculating disposable retired pay. Whether actually correct or not, the only evidence in the record that bears on the amount of Mr. Bowen's retirement pay that was disposable supports the trial court's finding that none of it was before the court for distribution.

¶22 Affirmed.

¶23 The remainder of this opinion has no precedential value. Therefore, it will be filed for public record in accordance with the rules governing unpublished opinions. RCW 2.06.040.

Korsmo, C.J., and Brown, J., concur.

Review denied at 176 Wn.2d 1009 (2012).