# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| | |
|---|---|
| In re Marriage of:<br><br>JOSE H. OCASIO-SANTIAGO,<br><br>          Appellant/Cross-Respondent.<br><br>   and<br><br>KIMBERLEY R. ROCKWOOD, fka<br>Kimberley Ocasio,<br><br>        Respondent/Cross-Appellant. | No.  48066-2-II<br><br><br>UNPUBLISHED OPINION |

MELNICK, J. — Jose Ocasio-Santiago appeals from the trial court's entry of a clarifying order regarding the allocation of community property between himself and his former spouse, Kimberley Rockwood, and its denial of his motion for revision.  Rockwood cross-appeals the trial court's reduction of the spousal maintenance amount and denial of an award of attorney fees.

We do not consider Ocasio-Santiago's appeal on the merits because he did not properly preserve the issues.  We conclude that the trial court did not err by reducing the spousal maintenance amount, and we do not award attorney fees to Rockwood.  We affirm.

## FACTS

Ocasio-Santiago and Rockwood were married from September 28, 1998 to June 6, 2014.  During the entirety of the marriage, Ocasio-Santiago served in the United States Army.  He remained in the service at the time the orders were appealed in this case.  Ocasio-Santiago filed a petition for dissolution of marriage.

The trial court ordered maintenance to Rockwood, and the parties agreed that Ocasio-Santiago would pay her $2,457.04 monthly, beginning on June 1, 2014 and ending when Ocasio-Santiago retired from military service, which was expected to occur in six months.

The trial court's decree of dissolution also awarded Rockwood 47 percent of Ocasio-Santiago's military retirement plan, based on the net disposable retirement pay. The trial court also entered a qualified domestic relations order (QDRO) detailing the distribution of Ocasio-Santiago's retirement.

The Defense Finance and Accounting Service sent Rockwood a letter requesting a clarifying order because it could not determine what the trial court awarded her. It wanted the order to state a fixed amount or a percentage of Ocasio-Santiago's retirement pay that should be paid to Rockwood.

Ocasio-Santiago filed a petition for modification of spousal maintenance, or in the alternative, a motion to vacate the dissolution decree pursuant to CR 60(b). He argued that the dissolution decree should be modified because a substantial change in circumstances occurred, and he was now set to retire in February 2016, at least 12 months beyond Ocasio-Santiago's anticipated retirement date based on his eligibility to retire at the time the court entered the original maintenance order. He also argued that Rockwood had obtained permanent employment, health insurance, and financial stability, and support was no longer warranted. In the alternative, he argued that the decree of dissolution should be vacated based on mistake, newly discovered evidence, and other reasons.

A court commissioner denied the motion to vacate the dissolution decree and awarded attorney fees to Rockwood. The commissioner's order stated that no substantial change in

circumstances occurred regarding spousal maintenance. The commissioner also entered an order clarifying the division of Ocasio-Santiago's military pension.

Ocasio-Santiago filed a motion for revision. He argued that there was a substantial change in circumstances, and that Rockwood should not have been awarded fees. In addition, he argued that the portion of the clarifying order regarding the amount of his retirement pay to be received by Rockwood should not be 47 percent.

A superior court judge granted the motion for revision in part. The judge found that a substantial change in circumstances existed to warrant a reduction in spousal maintenance. Rockwood had obtained a new permanent job with the Army that included medical benefits. The judge reasoned that the original order for spousal maintenance took into consideration that Rockwood would lose her preferential hiring treatment with the Army based on her status as a military member's spouse. This issue no longer existed because Rockwood had acquired permanent employment. Accordingly, the judge determined that some spousal maintenance was appropriate, but not the amount originally ordered.

The judge ordered that on September 1, 2015, Ocasio-Santiago's spousal maintenance obligation would be reduced to $1,400 per month for six months, and then maintenance would terminate. Finally, the judge ruled that each party would pay his or her own attorney fees.

Ocasio-Santiago appeals. Rockwood cross-appeals.

ANALYSIS

I.    CLARIFYING ORDER AND ORDER ON REVISION

Ocasio-Santiago argues that both the clarifying order and the order on revision divided his military disability benefits in violation of federal law and substantially modified the underlying decree instead of only clarifying it.

Rockwood argues that neither of Ocasio-Santiago's arguments was raised below, and thus, we should not consider the issues. We agree with Rockwood.

Ocasio-Santiago argues that he properly preserved his objection to the clarifying order because he submitted his own proposed clarifying order. He also argues that even if the issue is not preserved for review, we should consider it because it is a manifest constitutional error. Ocasio-Santiago claims the error affects a constitutional right because the order is barred by the federal preemption doctrine under the Supremacy Clause of the United States Constitution.[1] We disagree with Ocasio-Santiago.

A party generally waives the right to appeal an error absent an objection before the trial court. RAP 2.5(a). A purpose of the rule is to allow the trial court to correct any error called to its attention, thus avoiding needless appeals and retrials. *State v. O'Hara*, 167 Wn.2d 91, 98, 217 P.3d 756 (2009). But a party may raise an alleged error for the first time on appeal if it constitutes a manifest error affecting a constitutional right. RAP 2.5(a)(3).

In the trial court, Ocasio-Santiago did not object to the clarifying order on the basis it violated federal law and substantially modified the decree. He merely argued that the dissolution decree should be modified because a substantial change in circumstances occurred. In the

---

[1] For the first time in oral argument, Ocasio-Santiago argued that this case involved a jurisdictional issue. Because neither party raised or briefed this issue, we do not decide it.

alternative, he argued that the decree of dissolution should be vacated based on mistake, newly discovered evidence, and other reasons. Because Ocasio-Santiago did not raise the arguments he argues on appeal before the commissioner or the judge, the trial court did not have the opportunity to correct any error. *O'Hara*, 167 Wn.2d at 98. Accordingly, he did not preserve these issues for appeal.

His argument that the alleged errors affect a manifest constitutional right based on the supremacy clause also fails.

> The preemption doctrine derives from the Supremacy Clause, which provides, "This Constitution, and the laws of the United States which shall be made in pursuance thereof . . . , shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any State to the contrary notwithstanding."

*Mellon v. Reg'l Tr. Servs. Corp.*, 182 Wn. App. 476, 491 n.4, 334 P.3d 1120 (2014) (quoting U.S. CONST. art. VI, cl. 2). The Supremacy Clause does not create a cause of action nor is it a "'source of any federal rights.'" *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1383, 191 L. Ed. 2d 471 (2015) (quoting *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 107, 110 S. Ct. 444, 107 L. Ed. 2d 420 (1989)). "It instructs courts what to do when state and federal law clash, but is silent regarding who may enforce federal laws in court, and in what circumstances they may do so." *Armstrong*, 135 S. Ct. at 1383. Therefore, any error based on the Supremacy Clause does not constitute a manifest error affecting a constitutional right. RAP 2.5(a)(3). Accordingly, because we conclude that Ocasio-Santiago's appeal issues were not preserved and because the issues do not constitute a manifest constitutional error, we do not consider the issues.

CROSS-APPEAL ANALYSIS

I.    MODIFICATION OF SPOUSAL MAINTENANCE

Rockwood argues that the trial court erred by modifying the dissolution decree to reduce her spousal maintenance amount and its duration. Rockwood argues that the modification of the decree constituted error because no substantial change in circumstances occurred. We disagree.

A.    LEGAL PRINCIPLES

"The trial court has broad discretion in distributing property in a dissolution action." *In re Marriage of Bowen*, 168 Wn. App. 581, 586, 279 P.3d 885 (2012). "Trial court decisions in a dissolution action will seldom be changed upon appeal—the spouse who challenges such decisions bears the heavy burden of showing a manifest abuse of discretion on the part of the trial court." *Bowen*, 168 Wn. App. at 586. A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *Bowen*, 168 Wn. App. at 586. "A decision is manifestly unreasonable 'if it is outside the range of acceptable choices, given the facts and the applicable legal standard; it is based on untenable grounds if the factual findings are unsupported by the record; it is based on untenable reasons if it is based on an incorrect standard or the facts do not meet the requirements of the correct standard.'" *Bowen*, 168 Wn. App. at 586-87 (quoting *In re Marriage of Littlefield*, 133 Wn.2d 39, 47, 940 P.2d 1362 (1997)).

A decree respecting maintenance may be modified only upon a showing of a substantial change of circumstances. RCW 26.09.170(1)(b). The phrase "change of circumstances" refers to a "substantial and material change in the condition and circumstances of the parties, occurring since the entry of the decree, relative to the factors of (1) the necessities of the divorced wife and children, and (2) the practical and realistic ability of the ex-husband to meet the obligations so imposed." *Lambert v. Lambert*, 66 Wn.2d 503, 508, 403 P.2d 664 (1965); *In re Marriage of*

*Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001). A "substantial change in circumstances" is a fact that is unknown to the trial court at the time it entered the original parenting plan or an unanticipated fact that arises after entry of the original plan. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 105, 74 P.3d 692 (2003). "The determination whether a substantial and material change has occurred which justifies modification of maintenance or support is within the discretion of the trial court, and will not be reversed on appeal absent abuse of discretion." *In re Marriage of Ochsner*, 47 Wn. App. 520, 524-25, 736 P.2d 292 (1987).

B.      THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

RCW 26.09.090(1) provides a non-exhaustive list of factors for the trial court to consider when awarding maintenance:

> (a) The financial resources of the party seeking maintenance . . . ;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage . . . ;
> (d) The duration of the marriage . . . ;
> (e) The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and
> (f) The ability of the spouse . . . from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

RCW 26.09.090(1) requires only that the amount and duration of the maintenance award be just in light of the relevant factors.

The judge denied Ocasio-Santiago's motion for revision to vacate the dissolution decree. But it did grant Ocasio-Santiago's motion for reduction of spousal maintenance because of Rockwood's substantial change in employment.

A change of employment may be a substantial change in circumstances. *In re Marriage of Ochsner*, 47 Wn. App. 520, 525, 736 P.2d 292 (1987). The trial court concluded that Rockwood's

new permanent position in the Army constituted such a substantial change. It reasoned that at the time maintenance was ordered, "there was a concern that [Rockwood] would not have the current job that she has, that she would lose her preferential [hiring] treatment [in the Army] and, therefore, have difficulty in getting gainful employment." Report of Proceedings (RP) at 37. Accordingly, the trial court concluded that "Rockwood has had very good success in obtaining employment . . . [in] a very high-paying position." RP at 37. Thus, the trial court found that her change in employment meant that the original amount of spousal maintenance was no longer needed for her to get medical insurance and other needs that were anticipated at the time the court entered the decree. Because the trial court had tenable grounds to conclude that Rockwood's change in employment was a substantial change in circumstances, it did not abuse its discretion.

Rockwood also argues that the trial court erred by shortening the duration of her spousal maintenance. Ocasio-Santiago argued below that nowhere in the dissolution decree did it say he would retire in 2016 and maintenance would end, it only provided that maintenance would end upon his retirement. He argued that this was unfair because he could potentially have to pay maintenance for another 20 years if he did not retire, particularly because of Rockwood's change in circumstances. The judge ruled that maintenance would continue for six months.

Washington law does not limit how long a spouse may receive maintenance but allows a court to order maintenance "for such periods of time as the court deems just." RCW 26.09.090. "What is a reasonable length of time for a divorced spouse to become employable and provide for his or her own support, so that maintenance can be terminated, depends on the particular facts and circumstances of each case." *Spreen*, 107 Wn. App. at 348. Here, for the reasons stated as to why the trial court reasonably found there was a substantial change in circumstances, the same reasoning applies. Because the trial court has discretion to determine the length of maintenance

8

based on the particular facts of the case, it was not an abuse of discretion to limit the maintenance when both Rockwood and Ocasio-Santiago made similar salaries and Rockwood had secured more permanent employment.

Therefore, we conclude that the trial court did not abuse its discretion by modifying the spousal maintenance amount because it had tenable grounds to find that there was a substantial change in circumstances to warrant the modification.

II.     TRIAL COURT ATTORNEY FEES

Rockwood argues that the superior court erred by denying the commissioner's award of attorney fees to her because the order on revision was improperly granted by changing the maintenance award, and the original award of attorney fees initially made by the commissioner should be reinstated. Because we conclude that the order on revision was properly granted in part, we affirm, and do not award Rockwood attorney fees below.

III.     APPELLATE ATTORNEY FEES

Rockwood requests attorney fees on appeal for responding to Ocasio-Santiago's appeal and bringing her cross-appeal under RCW 26.09.140.

This statute grants a court discretion, after considering the financial resources of both parties, to award attorney fees for the expense of maintaining or defending "any proceeding" under chapter 26.09 RCW. RCW 26.09.140 also allows an appellate court to award attorney fees on appeal.

However, RAP 18.1(c) requires an affidavit of financial need, filed at least 10 days before the date set for consideration. "A party must timely file a financial declaration for his or her resources to be considered." *In re Marriage of Raskob*, 183 Wn. App. 503, 520, 334 P.3d 30

(2014). Rockwood did not file an affidavit of need. Therefore, we do not consider her request for attorney fees.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, A.C.J.

Lee, J.