IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Marriage of<br>TERRY LYNN MCDERMOTT,<br>Respondent,<br>and<br>SCOTT WILLIAM MCDERMOTT,<br>Appellant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | No. 78140-5-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION<br><br>FILED: June 24, 2019 |

SCHINDLER, J. — Scott William McDermott appeals the decision to deny his motion to revise the findings and order of the superior court commissioner granting the petition of Terry Lynn McDermott to modify maintenance. We conclude the undisputed record does not support finding a substantial change in circumstances. We lift the April 24, 2018 stay of the maintenance order, reverse and remand to vacate the order and dismiss the petition to modify maintenance.

2010 Dissolution

Scott and Terry McDermott married in 1981 and are the parents of two adult daughters and an adult son. Scott worked for Global Marine Transportation and Terry worked part-time as a hair stylist.[1]

---

[1] We refer to the parties by their first names for purposes of clarity.

Beginning in 2005, Terry suffered a series of strokes. In 2009, she experienced "massive neurological damage due to mercury poisoning." Scott and Terry separated that same year.

On August 10, 2010, Scott and Terry entered into a settlement agreement. In 2010, Scott was earning $10,000 a month as a tugboat captain for Global Marine Transportation. Scott agreed to pay Terry monthly maintenance of $3,000 per month until November 2023 and $2,500 per month until October 2025 when she was eligible to obtain her share of his Social Security benefits.

On August 19, 2010, the court entered the decree of dissolution. The decree awards Terry the family home and maintenance in accord with the terms of the settlement agreement.

At some point after 2010, Scott and Anna married. In February 2013, Scott and Anna borrowed money from Scott's mother Diane to purchase property and build a house in Ellensburg. Scott and Anna executed promissory notes and made monthly payments to Diane. A deed of trust on the property secured the promissory notes. Anna also "lent the community money" from her separate funds to purchase the property.

2014 Petition To Modify Maintenance

In March 2013, Scott lost his job as a tugboat captain at Global Marine Transportation. Scott was unemployed for approximately a year. From August until December 2013, Scott made only partial maintenance payments to Terry and beginning in January 2014, he made no maintenance payments.

2

In March 2014, Terry filed a motion to show cause why Scott should not be held in contempt of the order to pay her $3,000 a month in maintenance. In March, Scott obtained employment as a truck driver for Amerigas.

A superior court commissioner entered an "Order on Show Cause Re: Contempt/Judgment." The commissioner found that between August and December 2013, Scott paid "a reduced amount of $1,800[.00]" in maintenance and "paid no maintenance for January, February, and March, 2014." The March 26, 2014 order states Scott is not in contempt of court because he "did diligently pursue employment" and "does not have the present ability to comply" with the order to pay $3,000.00 a month in maintenance. The commissioner found his "new employment will be for $14[.00] per hour." The order also states Scott "is receiving an income tax refund of $13,421[.00] for 2013 of which ½ is his share of community property." The order states Scott failed to pay Terry "the sum of $15,000[.00] for maintenance for the period from August, 2013 through March, 2014." The court entered a judgment against Scott "in the amount of $15,000[.00] for unpaid maintenance arrearages" and ordered Scott to pay Terry "$6,710.50 (½ of tax refund)" and $1,500.00 in attorney fees. In April 2014, Scott started working for trucking company Amerigas earning $15 an hour.

On July 14, 2014, Scott filed a "Petition for Modification of Spousal Maintenance." Scott asserted there had been a substantial change in circumstances since entry of the decree in 2010. Scott states he "lost his high-paying job with Global Marine Transportation," he was unemployed for nearly a year, and he had been working full time for Amerigas since April 2014 earning $15 an hour. Scott requested the court enter an order modifying the monthly maintenance payment.

3

In response, Terry argued Scott "has not pursued employment in good faith" and owed "arrears of $29,000[.00]" in maintenance. However, Terry stated that if the court granted the modification, the "unpaid, past due maintenance should be deferred to be paid once Scott McDermott's mother passes." Terry requested the court order Scott "to report to Terry McDermott when his mother dies and to report the status of her estate." In September 2014, Scott received a promotion at Amerigas, earing $17.50 an hour or $2,240.00 net per month.

On November 13, 2014, a superior court commissioner entered an order modifying maintenance and findings of fact and conclusions of law. The commissioner found Scott acted in good faith in pursuing employment, there had been a "substantial change in circumstance since" entry of the 2010 decree, and he did not have the means to pay $3,000 a month in maintenance.

> [Scott] acted in good faith obtaining his current employment. He does not have the financial means to make the full monthly support obligations as originally ordered and his obligation is decreased from $3,000/month to $1,120/month.

The commissioner found Scott's income is "$2,240/month net." The order states Scott "shall pay 50% of his income as maintenance," or $1,120, beginning November 1, 2014 and "shall pay 50% of his tax refund annually until there are no maintenance arrears." The court ordered Scott to submit a W-2, a Form 1099, and a tax return each year to Terry. The court reserved ruling on the amount of maintenance arrearages. The order states Scott "shall notify Terry McDermott w[ith]in 7 days of his mother's passing."

4

2015 Work Injury

On October 23, 2015, Scott injured his back at work. Scott was unable to return to work at Amerigas. Scott filed a claim for disability benefits with the Department of Labor and Industries (L&I). L&I awarded Scott $2,586.33 a month in disability benefits.

Trust and Annuity

Scott's mother died in November 2015. On November 18, Scott notified Terry that Diane had died.

Diane's will established a spendthrift trust and directs "the entire residue of my Estate" to the McDermott Family Trust. The will designated Scott as the initial beneficiary of the McDermott Family Trust and her granddaughters Heather Daly and Hannah Kuehl as the remainder beneficiaries. The will states:

> If my son, SCOTT WILLIAM McDERMOTT survives me, he shall be the sole initial beneficiary of the McDermott Family Trust. The purposes of this trust are to provide for my son's needs while protecting the trust principal from any creditor of my son, ultimately preserving such principal for my son's daughters.

Diane appointed her granddaughter Heather as trustee of the McDermott Family Trust and her granddaughter Hannah as successor trustee. The will states that the trustee shall shave the "sole and absolute discretion" to "distribute as much of the income and principal to, or for the benefit of the beneficiary, as my trustee may from time to time deem proper for such beneficiary's health, maintenance, and support in reasonable comfort."

Diane had purchased an insurance annuity policy with proceeds payable on death. Diane designated Scott and her granddaughters Heather and Hannah as beneficiaries of the annuity. When Scott received his share of the proceeds, he paid Terry the amount he owed in past-due maintenance with interest. Scott also used the

annuity proceeds to pay the estate the amount owed on the loans from Diane of $103,013.61 and paid Anna $86,545.32 for the loan she made with her separate funds.

At some point in 2016, Scott and Anna separated. In July, Scott filed a petition for dissolution of the marriage. The court entered temporary orders giving Anna the right to "live in the family home" in Ellensburg and "have possession of the family truck." Scott moved into a "caboose" on property "owned by the McDermott Family Trust" in Liberty, Washington and the trust purchased a truck for Scott to use in exchange for "reasonable payment."

2016 Petition To Modify Maintenance

On May 17, 2016, Terry filed a petition to modify the November 13, 2014 maintenance order. Terry stated there was a substantial change in circumstances because Scott's mother died "leaving a substantial estate" and Scott is "the sole beneficiary of a trust she established for his benefit." Terry asserted Scott received an annuity in January 2016 for $189,532.60. Terry stated Scott "paid off the mortgages he and his current wife owed on the house they had built in Ellensburg." Terry argued Scott has "resources to pay the maintenance required and Terry McDermott has the need for the same." Terry requested the court order Scott to pay maintenance as agreed to in the 2010 settlement agreement of "at least" $3,000.00 a month until November 2023 and $2,500.00 a month through October 2025.

Scott filed a declaration asserting there "are no grounds to modify the maintenance." Scott stated his ability to pay has "not increased," he is "not the trustee of the trust," he "has no control over this trust or the distribution of the trust," and he "has not received any distributions from the trust." Scott asserted he "is currently not working at all due to a disability," he has "to undergo surgery," and he "is out of work

6

indefinitely." Scott stated his only income is the "disability income he receives from L&I" of $2,586.33. Scott also submitted the declaration of their daughter Heather, a copy of his mother's will, and financial documents. In her declaration, Heather states, "I am the Trustee of the MCDERMOTT FAMILY TRUST. I would like to state to the court on my father[']s behalf that the MCDERMOTT FAMILY TRUST has made no distributions to Scott W McDermott." Heather states the McDermott Family Trust "did purchase a truck and has made it available for Scott W McDermott to use for reasonable payment" but "[t]here have been no monetary distributions made to Scott W McDermott."

On September 15, 2016, a superior court commissioner entered a "Final Order and Findings on Petition to Modify Spousal Maintenance." The commissioner granted the petition and ordered Scott to pay Terry maintenance of $2,586 each month. The findings state:

> The monthly spousal support amount should be changed because . . . [t]here has been a substantial change in circumstances since the current order was signed. . . :
>> The amount shall be $2,586/month, which is Husband's current income from L&I. Husband's actions related to paying back the money owed to his mother's estate are troubling to the court. Husband is sole beneficiary of a trust.

The order also includes the following "Other findings":

(1) The 2010 Settlement Agreement set maintenance of $3,000 per month through 11/2023 and then $2,500 per month through 10/2025. This outlines the duty of support and is an acknowledgment by Scott McDermott of the need of Terry McDermott.
(2) Scott McDermott's mother was clear in her will of her intent that the trust established by her will only support him.
(3) The parties' daughter is the trustee with sole decision making power as to disbursements from the trust. She has used some of the trust to buy a $52,000 [plus] truck for his use.
(4) Scott McDermott received over $189,000 from an annuity after his mother's death. He chose to use over $100,000 of those funds to transfer to his mother's estate to pay back a debt. The estate was

7

then transferred to the trust for his benefit. These funds could have been used to pay mainten[ance].

(5) The court sets maintenance of $2,586 because Scott McDermott sought to take assets away from the court's jurisdiction (the money received in the annuity).

Scott filed a motion to revise the commissioner's order. The superior court adopted the findings of fact and conclusions of law of the commissioner. The court denied Scott's motion to revise and affirmed the order modifying maintenance. In the first appeal, we vacated the order and remanded for proceedings before a new judge. In re Marriage of McDermott, No. 76049-1-I (Wash. Ct. App. Oct. 16, 2017) (unpublished), http://www.courts.wa.gov/opinions/pdf/760491.

On remand, the court entered a "Corrected Order on Revision" denying the motion to revise. The court adopted the commissioner's September 15, 2016 findings and conclusions. The court also entered the following findings:

> Additionally, this court finds after the death of his mother, Mr. McDermott received $100,000[.00]: his 50% from an annuity. In his own words, Mr. McDermott, "chose to use it to pay off an outstanding debt [he] had. . . . [He] paid back [his] mother's estate . . ." Declaration of Scott McDermott page 2. This court is troubled by Mr. McDermott's decision. Similarly the court notes Mr. McDermott's stated expenses, e.g. rent and car payment, are also payments to the trust for items the trust purchased for Mr. McDermott. Unlike Mr. McDermott, Ms. McDermott does not have access to a trust or an inheritance to cover her outstanding expenses or to meet her basic needs, e.g. housing and transportation. Mr. McDermott's income is $2,586.33 from his L&I month benefits. This court finds the caselaw presented by counsel for respondent is distinguishable from the case at bar because the court is not ordering an assignment or direct payment of Mr. McDermott's L&I benefits to Ms. McDermott. Instead, the court finds Mr. McDermott's income equates [to] the amount of his L&I benefits and based upon his income amount Ms. McDermott is entitled to monthly spousal maintenance.[2]

---

[2] Most alterations in original.

Appeal of Order To Modify Maintenance

Scott appeals the March 6, 2018 Corrected Order on Revision.[3] Scott contends the court erred by denying the motion to revise the September 15, 2016 commissioner order modifying maintenance. Scott asserts (1) the record does not support finding a substantial change in circumstances since entry of the previous November 13, 2014 order modifying maintenance and substantial evidence does not support the findings, and (2) the order to pay the entire amount he receives in L&I disability benefits for maintenance violates RCW 51.32.040.

The decision of a court commissioner is subject to revision by the superior court. RCW 2.24.050.[4] RCW 2.24.050 states, in pertinent part:

> All of the acts and proceedings of court commissioners hereunder shall be subject to revision by the superior court. Any party in interest may have such revision upon demand made by written motion, filed with the clerk of the superior court, within ten days after the entry of any order or judgment of the court commissioner. Such revision shall be upon the records of the case, and the findings of fact and conclusions of law entered by the court commissioner.

On revision, the superior court reviews de novo the findings of fact and conclusions of law of the commissioner based upon the evidence and issues presented to the commissioner. State v. Ramer, 151 Wn.2d 106, 113, 86 P.3d 132 (2004). The superior court can adopt the decision of the commissioner "either expressly or by clear implication from the record." In re Dependency of B.S.S., 56 Wn. App. 169, 170, 782 P.2d 1100 (1989).

---

[3] Scott agreed to continue to pay Terry $1,120.00 per month in maintenance until resolution of this appeal. On April 24, 2018, a commissioner of this court granted Scott's motion to stay the order to pay Terry monthly maintenance of $2,586.33 a month pending further order of this court. The stay order requires Scott to continue to pay Terry $1,120.00 per month. The appeal was heard March 7, 2019. On May 8, 2019, Scott filed a motion to amend the stay order to remove the condition to pay Terry one-half of his disability income. On May 28, a commissioner granted the motion to amend the stay order until June 30, 2019.

[4] See also WASH. CONST. art. IV, § 23.

On appeal, we review the superior court decision. Ramer, 151 Wn.2d at 113. We review the superior court decision to determine whether substantial evidence supports the findings of fact and whether those findings support the conclusions of law. In re Marriage of Wilson, 165 Wn. App. 333, 340, 267 P.3d 485 (2011). "Substantial evidence is evidence sufficient to persuade a fair-minded person of the truth of the declared premise." In re Marriage of Hall, 103 Wn.2d 236, 246, 692 P.2d 175 (1984).

Scott contends the record does not support the court finding a substantial change in circumstances since entry of the November 13, 2014 order. Terry claims modification of maintenance does not require demonstrating a substantial change in circumstances. Terry cites RCW 26.09.170(7) to argue she need show only the passage of time and a change in income. The plain and unambiguous language of the statute does not support her argument.

Statutory interpretation is a question of law that we review de novo. In re Adoption of T.A.W., 186 Wn.2d 828, 840, 383 P.3d 492 (2016). The primary purpose of the inquiry is to determine and give effect to legislative intent. T.A.W., 186 Wn.2d at 840. If the meaning of a statute is plain on its face, we give effect to that meaning and the inquiry ends. Dep't of Ecology v. Campbell & Gwinn, LLC, 146 Wn.2d 1, 9-10, 43 P.3d 4 (2002).

RCW 26.09.170(7) addresses only child support, not spousal maintenance. RCW 26.09.170(7) states:

> (a) If twenty-four months have passed from the date of the entry of the order or the last adjustment or modification, whichever is later, the order may be adjusted without a showing of substantially changed circumstances based upon:
>     (i) Changes in the income of the parents; or
>     (ii) Changes in the economic table or standards in chapter 26.19 RCW[, Child Support Schedule].

10

(b) Either party may initiate the adjustment by filing a motion and child support worksheets.

(c) If the court adjusts or modifies a child support obligation pursuant to this subsection by more than thirty percent and the change would cause significant hardship, the court may implement the change in two equal increments, one at the time of the entry of the order and the second six months from the entry of the order. Twenty-four months must pass following the second change before a motion for another adjustment under this subsection may be filed.

RCW 26.09.170(1), not RCW 26.09.170(7), governs modification of a maintenance award.[5] The plain and unambiguous language of RCW 26.09.170(1)(b) states, in pertinent part, "Except as otherwise provided in RCW 26.09.070(7), the provisions of any decree respecting maintenance or support may be modified . . . only upon a showing of a substantial change of circumstances."[6]

In accord with the statute, it is well established that a court "may modify a maintenance award" only "when the moving party shows a substantial change in circumstances that the parties did not contemplate at the time of the dissolution decree."[7] In re Marriage of Spreen, 107 Wn. App. 341, 346, 28 P.3d 769 (2001).

The statute does not define "change in circumstances." In Spreen, the court held, " 'The phrase "change in circumstances" refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse.' " Spreen, 107 Wn. App. at 346 (quoting In re Marriage of Ochsner, 47 Wn. App. 520, 524, 736 P.2d 292 (1987)). The party filing the petition for modification has the burden of demonstrating that a substantial change in circumstances was not within the contemplation of the parties at

---

[5] We note the legislature recently amended RCW 26.09.170. LAWS OF 2019, ch. 275 (effective July 28, 2019). The amendments do not change the subsections addressed in this opinion, RCW 26.09.170(1) and (7). See LAWS OF 2019, ch. 275, § 2.

[6] Emphasis added.

[7] RCW 26.09.090 provides a nonexclusive list of factors the court shall consider in determining a spousal maintenance award.

the time of the entry of the previous order modifying maintenance. Spreen, 107 Wn. App. at 346; Wagner v. Wagner, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980). As to the financial ability of the obligor spouse, a former spouse may not obtain additional maintenance "on the theory that such is in keeping with [the] former [spouse]'s present station in life." Gordon v. Gordon, 44 Wn.2d 222, 227-28, 266 P.2d 786 (1954).

We review the decision to modify spousal maintenance for an abuse of discretion. In re Marriage of Drlik, 121 Wn. App. 269, 274, 87 P.3d 1192 (2004). A court abuses its discretion when its decision is based on untenable grounds or reasons. In re Marriage of Bowen, 168 Wn. App. 581, 586, 279 P.3d 885 (2012). We will affirm the superior court decision if it is based on tenable grounds that are not manifestly unreasonable. Ochsner, 47 Wn. App. at 524-25. A decision not supported by the record is untenable. State v. Rohrich, 149 Wn.2d 647, 654, 71 P.3d 638 (2003).

The court found a substantial change in the circumstances of the parties since entry of the November 13, 2014 order granting Scott's petition to modify maintenance because Scott is the "sole beneficiary of a trust," he received over $189,000 from an annuity, and he used over $100,000 to pay the debt he owed the estate when he could have used the annuity proceeds to pay maintenance. The order states that because Scott did not use the proceeds from the annuity to pay maintenance, Scott must pay the entire amount he receives in disability benefits to Terry.

The superior court adopted the commissioner's findings and conclusions and entered additional findings. The court found that unlike Scott, Terry "does not have access to a trust or an inheritance to cover outstanding expenses or meet her basic needs." The court was also "troubled" that Scott chose to use the annuity he received to pay debts owed to the estate.

12

The record does not support finding a substantial change in circumstances based on either the receipt and the use of the proceeds from the pay-on-death annuity or the spendthrift trust.

First, the undisputed record shows the death of Scott's mother and his inheritance was within the contemplation of the parties when the court considered and entered the November 13, 2014 order granting Scott's motion to modify maintenance. Scott lost his job as a tugboat captain in March 2013. Scott was unemployed until he started working for Amerigas in April 2014 earning $15 an hour. Scott filed the petition to modify maintenance in July 2014. In response, Terry asserted Scott had not paid maintenance since 2013 and owed her $29,000. But Terry requested the court defer ordering Scott to pay the past-due amount owed until "Scott McDermott's mother passes." The court granted Scott's motion to modify but deferred ruling on the past-due maintenance and ordered Scott to notify Terry "w[ith]in 7 days of his mother's passing." Scott notified Terry when his mother died in November 2015.

Scott used the proceeds he received from the annuity to pay the past-due maintenance he owed Terry with interest. Scott also used the annuity proceeds to pay the debts he owed to the estate. Contrary to the finding that Scott should not have used the annuity proceeds to pay the debts owed to the estate and that he "sought to take assets away from the court's jurisdiction (the money received in the annuity)," the uncontroverted record establishes Scott owed the debts to the estate and he used the proceeds from the annuity to pay Terry for the past-due maintenance and pay the debts owed to the estate before Terry filed the May 17, 2016 petition to modify the maintenance order. See Gordon, 44 Wn.2d at 227-28 (spouse is not entitled as a matter of right to modification of maintenance based on the "good fortune" of the former

spouse); see also In re Marriage of White, 105 Wn. App. 545, 549, 20 P.3d 481 (2001) (court cannot distribute an asset that no longer exists).

Second, the record also does not support finding a substantial change in circumstances because Scott is the "sole beneficiary" of the spendthrift trust. The trust states:

> My Trustee may, in my Trustee's sole and absolute discretion, distribute as much of the income and principal to, or for the benefit of the beneficiary, as my trustee may from time to time deem proper for such beneficiary's health, maintenance, and support in reasonable comfort.
> [ ]
> . . . The purposes of this [McDermott Family Trust] are to provide for my son's needs while protecting the trust principal from any creditor of my son, ultimately preserving such principal for my son's daughters.

As a general rule, a spendthrift trust prevents attempts by creditors to reach the trust assets and income. RCW 6.32.250; RCW 11.96A.190; Seattle First Nat'l Bank v. Crosby, 42 Wn.2d 234, 243, 254 P.2d 732 (1953); RESTATEMENT (THIRD) OF THE LAW OF TRUSTS § 58(1) (AM. LAW INST. 2003).[8]

Substantial evidence does not support the court's finding that Scott has "access to a trust or an inheritance" to cover expenses or meet his needs. Under the terms of the trust, Scott has no authority to compel distribution of trust income or assets. The uncontroverted record shows the trustee of the McDermott Family Trust, not Scott, has the sole authority and discretion to make distributions. The uncontroverted testimony of the trustee states she "has made no distributions to Scott W McDermott." The McDermott Family Trust purchased a truck and "has made it available for Scott W McDermott to use for reasonable payment." The record shows Scott pays the trust

---

[8] RESTATEMENT § 58(1) states that "if the terms of a trust provide that a beneficial interest shall not be transferable by the beneficiary or subject to claims of the beneficiary's creditors, the restraint on voluntary and involuntary alienation of the interest is valid." Unlike maintenance, a court may consider trust income in determining the ability to pay maintenance. See RCW 26.09.090.

"$250/month in return for use of the truck." Scott lived in a "caboose" on property owned by the McDermott Family Trust and paid the trust $750 in monthly rent.

Because the record does not support finding a substantial change in circumstances since entry of the November 13, 2014 order modifying the amount Scott shall pay in maintenance, we reverse the order to pay maintenance, lift the stay entered on April 24, 2018, and remand to dismiss the 2016 petition to modify maintenance.

_Schindler, J._

WE CONCUR:

_Mann, A.C.J._

_Appelwick, C.J._