28 P.3d 769 (2001)
107 Wash.App. 341
In re the Marriage of Marie Annette SPREEN, Appellant,
v.
Alan Tombaugh SPREEN, Respondent.
No. 25218-0-II.
Court of Appeals of Washington, Division 2.
July 20, 2001.
*771 James Michael Caraher, James Caraher & Associates, Tacoma, WA., for Appellant.
Robert Martin Hill, Morgan Hill, Pc, Olympia, WA., for Respondent.
*770 ARMSTRONG, C.J.
When Marie and Alan Spreen divorced in 1995, the trial court awarded Marie maintenance of $1,400 per month for four years. In late 1998, Marie petitioned for an extension and increase of maintenance based on a change in circumstancesher worsened mental healththat made her unemployable. The trial court extended maintenance, implicitly finding that there was a change in circumstances. But the court limited the maintenance to one additional year, finding that Marie had received maintenance "long enough" and that government assistance is available to people unable to work because of medical problems. Marie appeals, arguing that the court relied on improper factors when determining how long to extend maintenance. We agree and reverse and remand.

FACTS
Marie and Alan Spreen separated in 1993 after 17½ years of marriage. They have two children, both deaf. The 1995 dissolution decree required Alan to pay spousal support of $1,400 per month for four years from January 1995 to December 1998. The court based this amount and its duration on the length of the marriage, Alan's income (at that time between $60,000 and $80,000 per year), and Marie's lack of employment experience and skills.[1]
In November 1998, Marie petitioned to increase the maintenance amount and to extend it indefinitely with a review in two years.[2] Marie alleged that her mental health problems had worsened since the divorce. Alan agreed to continue paying maintenance while the modification action was pending.
At a hearing on June 25, 1999, Marie presented declarations from her medical doctor, psychologist, and psychiatrist; all agreed that she suffered from severe depression and bipolar disorder that made her unable to work outside the home. Psychotherapist Joseph L. Price stated that Marie had been diagnosed with bipolar disorder and was not "physically or emotionally capable of being employed at the present time." CP at 2. Psychiatrist Rae Wisler stated that Marie suffers from "severe, chronic depression" and that she was not responding well to medication. CP at 7. Dr. Wisler stated, "Marie's depressions, on a basis of reasonable medical probability, render her unemployable and fully disabled." CP at 8. Dr. Wisler anticipated that Marie would continue to need treatment with her current team of providers for another eighteen months to two years.
The trial judge noted that the parties had been married 17½ years, that Alan earned $6,500 per month, and that, although Marie had a college degree and is certified to teach English as a second language, she had not worked outside the home during the marriage. The court also observed that Marie's depression had worsened. The court granted Marie's motion in part, extending maintenance *772 until December 1999, one year past the original termination date. The court acknowledged Marie's mental health problems, but it concluded that
[s]ix years[[3]] of maintenance should be all that [Marie] is entitled to and that [Alan] should have to pay. [Marie] is supposed to do something, find a job, and if she can not, then she needs to look through other sources. Government agencies can help people that can't work for medical reasons.
CP 83.

ANALYSIS

I. Modification of Maintenance
We review a modification order for substantial supporting evidence and for legal error. In re Marriage of Stern, 68 Wash. App. 922, 929, 846 P.2d 1387 (1993). Substantial evidence supports a factual determination if the record contains sufficient evidence to persuade a fair-minded, rational person of the truth of that determination. Bering v. SHARE, 106 Wash.2d 212, 220, 721 P.2d 918 (1986).
A court may modify a maintenance award when the moving party shows a substantial change in circumstances that the parties did not contemplate at the time of the dissolution decree. Wagner v. Wagner, 95 Wash.2d 94, 98, 621 P.2d 1279 (1980); see RCW 26.09.170(1). "The phrase `change in circumstances' refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." In re Marriage of Ochsner, 47 Wash.App. 520, 524, 736 P.2d 292 (1987). We will not reverse a finding that a change in circumstances justifies modification absent an abuse of discretion. Lambert v. Lambert, 66 Wash.2d 503, 508, 403 P.2d 664 (1965).
Substantial evidence supports the trial court's conclusion that Marie's circumstances have changed sufficiently to warrant a maintenance extension. At the time of the original dissolution, the parties anticipated that Marie would be able to obtain job skills and begin working outside the home by December 1998. But Marie's worsening depression and bipolar disorder prevented her from doing so. Although the trial court never expressly concluded that there had been a change in circumstances, it stated, "[Marie] does have a problem; depression, bipolar, and she does need help...." RP at 22. Accordingly, the trial court modified the maintenance award. This decision to modify maintenance, based on the implicit finding of changed circumstances, was not an abuse of discretion.
But having determined that Marie was entitled to more maintenance because of her changed circumstances, the trial court abused its discretion by arbitrarily limiting maintenance to one additional year. RCW 26.09.090 sets forth a nonexclusive list of factors the court shall consider in determining a spousal maintenance award.[4] The statute provides:
(1) In a proceeding for dissolution of marriage, legal separation, declaration of invalidity, or in a proceeding for maintenance following dissolution of the marriage by a court which lacked personal jurisdiction over the absent spouse, the court may grant a maintenance order for either spouse. The maintenance order shall be in such amounts and for such periods of time as the court deems just, without regard to marital misconduct, after considering all relevant factors including but not limited to:
(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him, and his ability to meet his needs independently, including the extent to which a *773 provision for support of a child living with the party includes a sum for that party;
(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his skill, interests, style of life, and other attendant circumstances;
(c) The standard of living established during the marriage;
(d) The duration of the marriage;
(e) The age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; and
(f) The ability of the spouse from whom maintenance is sought to meet his needs and financial obligations while meeting those of the spouse seeking maintenance.
RCW 26.09.090. The only limitation on the maintenance award is that the amount and duration, in light of all the relevant factors, be just. In re Marriage of Washburn, 101 Wash.2d 168, 178, 677 P.2d 152 (1984). Of primary importance in the maintenance award are the parties' economic positions following the dissolution. DeRuwe v. DeRuwe, 72 Wash.2d 404, 408, 433 P.2d 209 (1967).
Here, the trial court noted several RCW 26.09.090 factors. It observed that the parties had been married 17½ years; that their two children are deaf and live with Marie in Vancouver, Washington so that they can attend a school for deaf children; that Alan's gross monthly income as a Boeing engineer is $6,500; that Marie did not work outside the home during the parties' marriage; and that she suffers from depression that has worsened since the parties' dissolution.
But after citing these statutory factors, the court turned to other, nonstatutory factors to justify only one additional year of maintenance. First, the court stated that six years of maintenance was all that Marie was "entitled to." CP at 83. But the court did not base this on Alan's ability to pay,[5] Marie's need in light of her medical condition, or any other recognized factor. Thus, the court's six-year limit on maintenance is unfounded and arbitrary. Washington law does not limit how long a spouse may receive maintenance but allows a court to order maintenance "for such periods of time as the court deems just." RCW 26.09.090. What is a reasonable length of time for a divorced spouse to become employable and provide for his or her own support, so that maintenance can be terminated, depends on the particular facts and circumstances of each case. Endres v. Endres, 62 Wash.2d 55, 58, 380 P.2d 873 (1963). In some cases, a lifetime award of maintenance may even be just. See In re Marriage of Sheffer, 60 Wash.App. 51, 55-56, 802 P.2d 817 (1990); In re Marriage of Tower, 55 Wash.App. 697, 703-04, 780 P.2d 863 (1989); In re Marriage of Morrow, 53 Wash. App. 579, 584-89, 770 P.2d 197 (1989). Here, at least one of Marie's doctors predicted that Marie would be unable to work for at least eighteen months to two years. Thus, the facts and circumstances here are inconsistent with the trial court's conclusion that six years is all that Marie is "entitled to."
The court also cited the availability of government assistance as a reason for limiting maintenance to one year. No Washington case has considered the availability of social services or charity as a factor in determining a maintenance award under RCW 26.09.090. In In re Marriage of Zahm, 138 Wash.2d 213, 218, 978 P.2d 498 (1999), the husband argued that the trial court abused its discretion in considering his social security benefits when awarding maintenance to the wife. Our Supreme Court concluded that there was no abuse of discretion because the trial court properly considered the RCW 26.09.090 factors, and because the husband's receipt of social security benefits was relevant to determining the parties' relative economic circumstances. But Zahm is distinguishable. There, the husband was already receiving social security benefits and they were relevant to his ability to pay maintenance. Also distinguishable are cases where the maintenance award was terminated or reduced when the receiving spouse began collecting social security benefits. See, e.g., In re Marriage of Sanborn, 55 Wash.App. 124, 125, 777 *774 P.2d 4 (1989); Hammond v. Hammond, 26 Wash.App. 129, 130, 611 P.2d 1352 (1980).
But we need not decide whether public assistance is a proper factor to consider in awarding maintenance. Neither party presented evidence as to what programs are available to Marie or what amount of assistance she would qualify for. Similarly, nothing in the record supports the trial court's conclusion that Marie could "find part-time work" if government assistance is unavailable. In fact, the record indicates that Marie's depression prevented her from working even part-time.
An award that does not evidence a fair consideration of the statutory factors results from an abuse of discretion. In re Marriage of Mathews, 70 Wash.App. 116, 123, 853 P.2d 462 (1993). Here, the trial court considered the statutory factors, but it apparently relied on other factors when determining the modified maintenance. This was an abuse of discretion.
Of course, the trial court may have come to the same result (one year of additional maintenance) if it had based its decision on a fair consideration of the statutory factors. But the process was flawed in this case. See White v. White, 105 Wash.App. 545, 20 P.3d 481 (2001) (granting reconsideration of trial court's property distribution because, although trial court had discretion to distribute the marital property as it did, it exercised its discretion for the wrong reasons). On remand, the trial court must award maintenance based on a proper consideration of RCW 26.09.090 and any other relevant factors.
Marie makes two other arguments that could arise on remand. She contends that the trial court erred by not ordering that the maintenance award be automatically subject to review at the end of the one-year extension. She cites In re Marriage of Coyle, 61 Wash.App. 653, 811 P.2d 244 (1991), to argue that termination of maintenance requires a showing of changed circumstances. But she misreads Coyle. There, the original award required the husband to pay permanent maintenance, and the husband later sought to terminate this obligation. Because termination would modify the original award, it was necessary for him to show a change in circumstances. Coyle, 61 Wash.App. at 657, 811 P.2d 244. But when an award of maintenance is for a set period, Coyle does not require that the parties show a change in circumstances before the obligation may cease. The trial court here did not abuse its discretion by not requiring a review hearing at the end of the one-year term.
Similarly, Marie argues that the trial court erred by entering a final order limiting the extended maintenance to one year. She reasons that under In re Marriage of Short, 125 Wash.2d 865, 876, 890 P.2d 12 (1995), the trial court may not make maintenance nonmodifiable. But here, the trial court did not order that the award be nonmodifiable, only that its order was "final." Thus, Marie is free to petition again for modification if she wishes, as long as she can demonstrate a change in circumstances as RCW 26.09.170 requires.

II. Attorney Fees
Although Marie devotes a section of her opening and reply briefs to attorney fees, it is unclear what she is requesting. Even assuming that she is (1) appealing the trial court's decision to limit her award of attorney fees to $1,500, and/or (2) requesting attorney fees on appeal, her claims fail.
Under RCW 26.09.140, the court may award attorney fees to either party in a maintenance action. In determining whether it should award fees, the court considers the parties' relative need versus ability to pay. In re Marriage of Shellenberger, 80 Wash. App. 71, 87, 906 P.2d 968 (1995). We review this decision for abuse of discretion. In re Marriage of Terry, 79 Wash.App. 866, 871, 905 P.2d 935 (1995). We will reverse an attorney fees award if the decision is untenable or manifestly unreasonable. In re Custody of Salerno, 66 Wash.App. 923, 926, 833 P.2d 470 (1992). Here, the trial court ordered Alan to pay $1,500 of Marie's attorney fees and costs due to the "wide disparity" in the parties' incomes, Alan's greater earning ability, and Marie's continuing need for support. *775 It properly balanced Marie's needs against Alan's ability to pay, and it required Alan to pay only a portion of Marie's attorney fees. This was not an abuse of discretion.
Marie's claim for attorney fees on appeal also fails. Although RCW 26.09.140 permits this court to award attorney fees on appeal upon a showing of financial need, Marie did not comply with RAP 18.1(c), which requires her to submit an affidavit of financial need at least 10 days before oral argument. This failing precludes an attorney fees award. In re Matter of Marriage of Crosetto, 82 Wash.App. 545, 565-66, 918 P.2d 954 (1996), appeal after remand, 101 Wash.App. 89, 1 P.3d 1180 (2000).
Reversed and remanded to revise maintenance order.
We concur: HOUGHTON, J., QUINN-BRINTNALL, J.
NOTES
[1] The record does not contain the findings of fact and conclusions of law from the original dissolution proceedings. In a memorandum supporting the modification petition, Marie's attorney stated that these were the reasons for the original maintenance award, citing the original findings of facts.
[2] Marie also petitioned to modify the child support order. She does not appeal the child support modification order.
[3] Alan paid maintenance for one and a half years while the parties were separated, for the four years following the dissolution, and for six months while the petition for modification was pending.
[4] This statute does not expressly state that it applies to maintenance modification. Nor does RCW 26.09.170, the modification statute, state what factors the court should use when modifying maintenance. Modification cases primarily address whether substantial evidence supports a finding of changed circumstances. Nevertheless, once the court finds that changed circumstances warrant a modification, the issues of amount and duration are the same as in the original dissolution.
[5] Alan concedes that he is able to continue paying maintenance.