IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | |
| | ) | No.  35309-5-III |
| PHILLIP EUGENE JONES, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| SHARON LEE HOKE JONES, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Sharon Jones appeals the denial of her motion to modify the

maintenance awarded by the 2010 decree dissolving her marriage to Dr. Phillip Jones.

The trial court found that she had not established a substantial change of circumstances.

We affirm.

FACTS AND PROCEDURAL BACKGROUND

Sharon Jones and Dr. Phillip Jones were married for 30 years before separating in

November 2008.  Phil[1] is a cardiologist.  For a time during their marriage, Sharon worked

---

[1] Given the common last name, we refer to the parties by their first names for
clarity.  We intend no disrespect.

as a registered nurse, but she ceased working in 1989. Sharon received treatment for bipolar disorder and depression from David Dunner, M.D. beginning in 1996 and continuing through 2005. She has been treated for her mental health issues by David Bot, M.D. since 2007. Dr. Bot has diagnosed her as suffering from mood disorder, depression, and anxiety.

When the parties divorced in July 2010, Phil was ordered to pay maintenance for five years beginning on August 1, 2010, and to pay child support until their youngest child graduated from high school. The maintenance amount was initially to be $4,600 a month, and child support was another $1,400 a month. Upon the youngest child's high school graduation, the maintenance amount would increase to $5,750 per month through the July 2015 termination of the obligation.

In dividing the marital property in 2010, the court placed no value on the family residence in Cheney, which had been destroyed in a fire, nor did it place a value on real estate in Alaska owned by the couple. According to Phil, that is because neither property had any value. What was left of the family residence was distributed to Phil, who allowed it to be foreclosed. He sold the Alaska property for a $150,000 capital loss. His uncontested characterization of the value of marital assets distributed to the parties by the

2010 decree is that Sharon received $1,533,000 in value and he received $1,018,900 in value.

Six days after the divorce decree was entered, Sharon filed for Social Security disability benefits based on her disabling mental health problems. She alleged an onset date of June 1, 1996. She filed a request for a hearing in March 2011, and her case was heard in January 2012. Benefits were awarded her in February 2012. The order awarding benefits found that Sharon had "not engaged in substantial gainful activity since June 1, 1996," and that she suffered from "migraine headache with vision changes; thyroid disorder; and bipolar disorder." Sealed Clerk's Papers (SCP) at 210. The administrative law judge found that she had not worked as a nurse for 20 years "in part because of her bipolar disorder." SCP at 211. Ms. Jones receives $924 a month in Social Security disability payments.

A couple of weeks before Phil's otherwise-final maintenance payment was due, Sharon petitioned for modification. She alleged the following substantial change of circumstances since entry of the decree:

> I have been found to be disabled by Social Security and only receive a small amount a month. I supported Dr. Jones for more than 30 years. We established a standard of living that I cannot maintain without his financial help. He earns what I have in savings in just 2 years and can afford maintenance.

Clerk's Papers (CP) at 16.

Phil opposed the petition, arguing that while he had an annual base salary of $700,000, he was almost 65 years old and nearing retirement, and it had taken him many years to "even begin to recover" financially from the divorce. CP at 50. Among Phil's circumstances cited by his lawyer were that Sharon received over $500,000 more in assets than Phil in the property distribution, he had paid her more than $345,000 in maintenance over the years, and he had paid the post-secondary education expenses of the parties' two children. Phil argued that despite his employment, his net worth remained lower than Sharon's.

In response to Phil's declaration, Sharon filed a declaration of her own, in which she claimed that at the time the divorce decree was entered, she thought she would be able to return to her prior employment as a nurse. She also stated that the parties had "agreed to reserve maintenance," because Phil was aware of her mental health issues, and the reservation was needed to ensure that she would have the necessary financial resources. CP at 183. She accused Phil of being dishonest about his finances.

At the hearing on the modification request, the court commissioner cited Sharon's petition, in which she identified the substantial change in circumstances as being the finding by the Social Security Administration that she was disabled. The commissioner rejected that as a "new or different set of circumstances," explaining:

> The fact that she was found to be disabled and received an award from Social Security is new and different. But the fact that her situation with her mental health, that wasn't new; that was something that had going on—

4

been going on clear back to 2007 that was existing at the time the parties negotiated, settled upon, and/or had an award from Judge Sypolt in 2010. That situation with Ms. Jones' mental health was existing at that point in time.

Report of Proceedings (RP) at 34-35. The commissioner rejected Sharon's reliance on Phil's increased income following the divorce and his marriage and property acquisitions, stating that without a substantial change of circumstances, "The fact that Dr. Jones has remarried, has increased his assets post-divorce, is not relevant at all to this case." RP at 37.

The commissioner denied the request for modification. Sharon appeals.

ANALYSIS

Sharon argues that her inability to work is a substantial change in circumstances not contemplated by the parties at the time the divorce decree was entered.

Maintenance awards can only be modified upon a showing of a substantial change in circumstances not within the parties' contemplation at the time of the dissolution decree. *In re Marriage of Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001); *see also* RCW 26.09.170(1). The change must have been one "that was not within the contemplation of the parties at the time the decree was entered." *In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292 (1987). "The phrase 'change in circumstances' refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse." *Id.* at 524. Regarding the financial ability of the obligor

spouse, "[a] former wife may not obtain additional alimony on the theory that such is in keeping with her former husband's present station in life." *Gordon v. Gordon*, 44 Wn.2d 222, 228, 266 P.2d 786 (1954).

The party petitioning for modification bears the burden of demonstrating the change of circumstances. In determining whether she or he has met this burden, "the basic test, absent the most exceptional circumstances, is: Could and should the facts now relied upon as establishing a change in the circumstances have been presented to the court in the previous hearing?" *Lambert v. Lambert*, 66 Wn.2d 503, 509, 403 P.2d 664 (1965). Determining whether there has been the required change in conditions and circumstances, is a question addressed to, and that rests within, the sound discretion of the trial court. *Gordon*, 44 Wn.2d at 226. "Unless it can be said that the trial court has abused its judicial discretion in this regard, its exercise thereof will not be disturbed." *Id.* at 227.

A substantial change of circumstances can be demonstrated where the expectation at the time of divorce is that the spouse receiving maintenance will become self-supporting during the term of the obligation, and the expectation does not come to pass through no substantial fault of the receiving spouse. *Bowman v. Bowman*, 77 Wn.2d 174, 175, 459 P.2d 787 (1969). At the same time, where it is believed that one spouse will "have a more difficult time adjusting her lifestyle than will [the other]," a trial court may

"choose[ ] a disproportionate division of the property in lieu" of ordering maintenance for an extended period of time. *In re Marriage of Estes*, 84 Wn. App. 586, 593, 929 P.2d 500 (1997). "The trial court may properly consider the property division when determining maintenance, and may consider maintenance in making an equitable division of the property." *Id.* (citing *In re Marriage of Rink*, 18 Wn. App. 549, 552-53, 571 P.2d 210 (1977).

The issue for the commissioner presented by Sharon's primary contention below was whether Sharon demonstrated that the parties and the court expected in 2010 that she would resume working within five years—or whether, as Phil contends, they recognized she was not likely to become self-supporting and for that reason she was awarded $500,000 more in value of the parties' assets.

The record demonstrates that both parties were completely aware of Sharon's mental health issues at the time the divorce decree was entered and were aware that her mood disorder and depression had been debilitating in the past. Sharon's claim that she expected to go back to work as a nurse at the time the decree was entered is not easily reconciled with her application for Social Security disability benefits six days later. It is not easily reconciled with her allegation in the disability benefit proceedings that her disability onset date was June 1, 1996.

Sharon's alternative and inconsistent theory is that she foresaw future financial difficulty and obtained Phil's agreement "to reserve maintenance." CP at 183. Phil

denies the issue was reserved. Sharon's lawyer appears to rely on a handwritten notation

on the decree in contending that the issue was reserved, but the notation cannot

reasonably be read as reserving the issue or as otherwise circumventing the requirement

to show a substantial change of circumstances.[2] Her disputed assertion that "Phil agreed

to reserve" is not easily reconciled with the trial court's disproportionate distribution of

the marital assets. *Id.* If it was understood that Phil would pay maintenance as long as

needed to maintain Sharon's historic standard of living, there would have been no reason

for the court to award her $500,000 more in assets than it awarded to Phil.

---

[2] Sharon's lawyer appears to rely on the handwritten language in this, the "Maintenance" provision of the decree:

> The husband shall pay $4,600 maintenance and $1,400 child support until Brandon graduates from high school. At that time child support will end and maintenance shall increase to $5,750 maintenance per month. Maintenance shall be paid semi-monthly. Maintenance shall continue for five years from August 1, 2010. The last payment shall be due July 1, 2015. The first maintenance payment shall be due on August 1, 2010.
>
>> The obligation to pay future maintenance is terminated upon the death of either party or the remarriage of the party receiving maintenance, *and is modifiable.*
>
> Payments shall be made:
>
>> directly to the other spouse.

CP at 11.

We find no abuse of discretion in the commissioner's determination that Sharon failed to show a substantial change of circumstances. Its order is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, C.J.

Korsmo, J.