# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

GREGORY WILLIAM SHEWRING,

Appellant,

and

CYNTHIA DIANE BLACKSHEAR,

Respondent.

No. 78617-2-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: September 23, 2019

SMITH, J. — In a dissolution proceeding, a trial court has broad discretion to distribute marital property and award maintenance so as to leave the parties in roughly equal financial positions. Gregory Shewring challenges the court's distribution of property and award of maintenance, asserting that these decisions were based on impermissible considerations, erroneous calculations, and resulted in an inequitable division of property. But because he fails to demonstrate a manifest abuse of discretion, we affirm.

## FACTS

Gregory Shewring and Cynthia Blackshear began living together in 2001 and married in 2004. After a relationship of approximately 15 years, Shewring filed a petition to dissolve the marriage in April 2016. Blackshear moved out of the parties' home. During the relationship, the parties bought and sold multiple residences and lived in various parts of the country. When they separated in

2016, they were living on Whidbey Island in a home they purchased a couple of years earlier.

At the time of trial in February 2018, both Shewring and Blackshear were 67 years old and retired. Shewring remained in the Whidbey Island home. Blackshear resided in a rented apartment in Mason County, Washington.

Shewring had several sources of retirement income, including a police pension, veteran's disability income, and an army reserve pension. The court determined that, as of December 2016, Shewring received a total monthly income of more than $7,500 from these sources and his income had likely increased since then due to cost of living adjustments. Shewring claimed expenses of approximately $4,370, which left him with more than $3,000 per month of disposable income.

Blackshear, on the other hand, received less than $2,000 in monthly net income, primarily from Social Security. She was also receiving monthly payments of $424 on a five-year promissory note, resulting from the sale of a property near Shelton, Washington in 2015. Blackshear's claimed monthly expenses were approximately $4,500. Shewring did not pay spousal support to Blackshear during the period of nearly two years while the dissolution was pending.

Pretrial, Shewring argued that the court should award a larger share of the community assets to him, including the Whidbey Island home. Shewring contended that Blackshear had no need for postdissolution support. Blackshear

also requested more than 50 percent of the community property, as well as lifetime maintenance of at least $2,500 per month.

The court valued the parties' assets in accordance with Shewring's pretrial affidavit and awarded the parties' major asset, the marital home, to him.[1] The court awarded community assets to Shewring with a total net value of $60,000, more than the value of assets awarded to Blackshear.[2] In addition, the court awarded all of the parties' personal property to Shewring and assigned a value of $15,000 to that property.[3] Considering the $75,000 difference between the value of the community property assets awarded to Shewring and those awarded to Blackshear, the court observed that equalizing the community property awards would require a $37,500 transfer payment to Blackshear. However, the court concluded that it was not practical to order a transfer payment under the circumstances, and instead, it would consider the unequal property distribution in determining the amount and length of maintenance. The court explained:

> Assuming that the community estate is divided equally, as I believe Ms. Blackshear agreed would be appropriate in her closing argument assuming the Court awards appropriate maintenance, a transfer payment would be necessary from Mr. Shewring to Ms. Blackshear in the sum of $37,524.
>
> It is not practical under the facts of this case for Mr. Shewring to pay this sum to Ms. Blackshear so the Court has decided to take this into account in the maintenance award. Of

---

[1] The court accepted the appraised value of the home, in accordance with Shewring's pretrial affidavit, rejecting his assertion that the appraised value was inflated and less accurate than the tax assessed value.

[2] Blackshear deposited inherited funds into a separate bank account during the marriage and the court awarded that account to her as separate property.

[3] Both parties assigned a value of more than $28,000 to the personal property.

course, the Court's property and debt division and the maintenance award should be considered as a whole and they should be considered in relation to each other.

With respect to maintenance, the court noted there could be no "starker contrast" in the parties' respective positions. The court stated that there was no doubt that maintenance should be awarded and not to award maintenance, as advocated by Shewring, would amount to a "clear abuse of discretion." The court identified the issues to be resolved as the amount and duration of maintenance.

The court discussed the statutory factors under RCW 26.09.090 and pertinent standards under controlling case law. The court noted that Shewring had "substantial" financial resources exceeding his expenses, whereas Blackshear would have a "difficult time" meeting her needs without maintenance, given her financial resources. Moreover, the court determined that due to her age and health condition, it was not realistic to believe that Blackshear would be able to earn income to equalize the parties' resources. The court further considered the parties' "middle class standard of living" and "mid-range" length of the relationship. Finally, the court determined that Mr. Shewring had financial resources that would allow him to meet his own needs and pay maintenance, noting that Shewring's income had likely risen since the documentation of his income was more than a year out of date.

In addition to these factors and the value of community property allocated to each party, the court considered the relative value of the parties' pre-relationship assets. The testimony established that when the parties began living together, Shewring had poor credit and virtually no assets, whereas Blackshear

owned a home and a sailboat, and was employed full time. At the time of the marriage, she had approximately $50,000 in savings. By 2004, Blackshear had sold her Texas home and the boat and used the proceeds to purchase homes in Florida and Washington. The court concluded there was a difference of approximately $74,000 in the value of assets the parties brought into the relationship.[4]

The court found that Blackshear had a minimum need of $2,105, given her income and expenses, and that her projected future expenses were reasonable. The court further observed that because Blackshear had been unable to cover her expenses after the separation, she had withdrawn approximately $35,000 from a community savings account. The court noted that monthly maintenance of $2,500 per month for five years would result in payments totaling $150,000, which would be approximately equal to the total sum of the differentials the court outlined. Therefore, the court determined that five years was the "minimum duration" of maintenance. In consideration of the statutory factors and the evidence in the case, the court ruled that maintenance of $2,500 per month for a total of eight years would be appropriate.

The court further ordered Shewring to obtain term life insurance coverage naming Blackshear as the beneficiary to secure the maintenance awarded and to pay the insurance premiums for five years.[5] The court also required Shewring to

---

[4] The court found that Shewring's contribution was approximately $28,000 from proceeds of the sale of property owned during a prior marriage.

[5] The court required Blackshear to take over payment of the premiums if she wished to extend the coverage for an additional three years.

5

elect and maintain former spouse survivor benefit plan coverage for Blackshear. Shewring appeals.

ANALYSIS

Shewring challenges the amount and duration of maintenance awarded to Blackshear, characterizing the award as a "transfer payment" spread over a period of eight years.[6] Shewring contends that the trial court appropriately divided the parties' community assets equally, but then erred by assessing additional sums against him based on pre-relationship assets that did not retain their separate character and Blackshear's post-separation use of community funds. As a result of its errors in adding these amounts to the "transfer payment," Shewring contends that the court modified the division of property to "grossly favor" Blackshear.

Trial courts are entitled to broad discretion in dissolution proceedings. In re Marriage of Wright, 179 Wn. App. 257, 261, 319 P.3d 45 (2013). Generally, we will not disturb a trial court's decisions in a dissolution proceeding. In re Marriage of Griffin, 114 Wn.2d 772, 776, 791 P.2d 519 (1990). Because the trial court is in the best position to determine what is fair, its decisions will be reversed only if there has been a manifest abuse of discretion. In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005). A trial court abuses its discretion if its decisions are based on untenable grounds or untenable reasons. Muhammad, 153 Wn.2d at 803. This discretion applies both to a trial court's

---

[6] In her responsive briefing, Blackshear also challenges aspects of the decree of dissolution and the court's failure to award lifetime maintenance. However, she did not file a notice of cross appeal as required by RAP 5.1(d). Accordingly, we do not address those challenges.

division of property and debts and to awards of maintenance. Wright, 179 Wn. App. at 261 (property division); In re Marriage of Valente, 179 Wn. App. 817, 822, 320 P.3d 115 (2014) (maintenance).

We reject Shewring's characterization of the issue. The trial court did not order a transfer payment. Indeed, the court expressly declined to do so. And the trial court did not modify its division of property, which awarded a greater share of the community estate to him. Instead, the court considered statutory and other relevant factors for purposes of determining the amount and duration of maintenance. Shewring's argument is simply that the amount of maintenance is unreasonable and that, in light of the substantial maintenance awarded, the overall distribution of property is inequitable.

When distributing property in a dissolution proceeding, RCW 26.09.080 requires that a trial court consider the following factors: (1) the nature and extent of the community property, (2) the nature and extent of the separate property, (3) the duration of the marriage, and (4) the economic circumstances of each spouse at the time the division of the property is to become effective. In weighing these factors, the court must make a "just and equitable" distribution of the marital property. RCW 26.09.080. A trial court need not divide community property equally. In re Marriage of Rockwell, 141 Wn. App. 235, 243, 170 P.3d 572 (2007). "Future earning potential 'is a substantial factor to be considered by the trial court in making a just and equitable property distribution.'" Rockwell, 141 Wn. App. at 248 (quoting In re Marriage of Hall, 103 Wn.2d 236, 248, 692 P.2d 175 (1984)).

7

With respect to maintenance, when a trial court awards maintenance, it has considerable discretion as to the amount and duration of the award. In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). There is no uniform standard for determining the proper duration of a maintenance award. Rather, maintenance awards are "flexible tool[s] by which the parties' standard of living may be equalized for an appropriate period of time." In re Marriage of Washburn, 101 Wn.2d 168, 179, 677 P.2d 152 (1984). "The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just." In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990).

RCW 26.09.090 governs an award of maintenance. In awarding maintenance, the court must consider the following nonexclusive statutory factors:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently . . . ;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;
> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090(1).

The record demonstrates that the trial court considered all the relevant statutory factors. At trial, the court heard evidence about the parties' respective financial condition, the duration of the marriage and prior relationship, and the parties' standard of living before and after separation. The trial court clearly took into account the extent of the parties' resources, expenses, and their future economic prospects, given their ages, and physical and emotional conditions. The court also considered Blackshear's estimated future expenses and her testimony that she was operating at a deficit to meet her monthly household expenses.

As noted, the statutory factors are not exclusive. It is well settled that the trial court may properly consider other factors, including the property division, when determining maintenance, and that the court may also consider maintenance in making an equitable division of property. In re Marriage of Estes, 84 Wn. App. 586, 593, 929 P.2d 500 (1997). No authority supports Shewring's position that the court was prohibited from considering pre-relationship assets that were used for the benefit of the community but did not remain separate assets.

The testimony established that Blackshear was financially secure with stable income and assets when the relationship began. Proceeds from the sale of her assets allowed the parties to fund subsequent purchases of other properties. Shewring, on the other hand, entered the relationship with neither property nor savings, and had poor credit. The court did not engage in "double counting" assets by recognizing that the improvement of Shewring's financial

9

position was due, in no small part, to the infusion of Blackshear's assets and income. And it was not inequitable for the court to consider that because of Blackshear's retirement, age, and deteriorated health condition, she would be unable to regain financial security without significant spousal support.[7]

Shewring also fails to establish that the court impermissibly considered the lack of support during the pendency of the dissolution and Blackshear's use of community resources to cover her expenses in that period. The court awarded the value of a bank account to Blackshear that, at the time of separation, had a balance of $73,350. But, by the time of trial, the account had a diminished value because Blackshear used approximately $35,000 to pay expenses, including attorney fees. Recognition of this was not a "miscalculation" of the value of the account. And the court's consideration of the loss in value of the asset for purposes of determining maintenance was not inconsistent with its decision not to award attorney fees "in light of the overall division of property and debts and the maintenance award." The court reasonably determined that the loss in value of the account was likely due to the fact that Blackshear had not received maintenance.

Shewring's reliance on In re Marriage of Spreen, 107 Wn. App. 341, 28 P.3d 769 (2001), is unavailing. In that case, the court granted a motion to modify maintenance in light of the former wife's deteriorated mental health condition.

---

[7] We reject Shewring's claim that the court made a mathematical error by considering the value of some of Blackshear's assets in 2001, when the parties began living together, and her bank balance at the time of the marriage. For purposes of determining equitable maintenance, the court was not required to consider the value of all assets at a single point in time.

But the court then arbitrarily limited the extension of maintenance to only one additional year, on the ground that the wife had received maintenance for long enough and was "entitled" to no more than six years of support. Spreen, 107 Wn. App. at 345. This case does not involve a modification action. And unlike the court in Spreen, in determining the maintenance award, the trial court fairly considered the statutory factors and properly focused on the parties' respective postdissolution financial condition.

Shewring argues that the court intended an equal distribution of property, but then awarded $240,000 in maintenance to be paid over the course of eight years, which had the effect of drastically reducing his share of the property. But, to the contrary, the court's statements indicate only that it intended an equitable result with respect to the allocation of property and maintenance. And his argument disregards the fact that his income will enable him to pay the $2,500 monthly support payment without resort to the use of community property assets.

Shewring fails to establish that the award of maintenance was untenable. Contrary to his claim, the trial court considered the division of all property, including Blackshear's award of separate property. There is nothing to suggest the court failed to appreciate the impact of additional costs associated with life insurance and survivor benefits. The court considered Blackshear's expenses and ability to meet her own needs, and the fact that some of Blackshear's expenses were projected estimates, not actual expenses. While Shewring disagrees, the maintenance award also justified the property division which allocated a higher share of the property to him, as well as the parties' most

11

valuable asset, the Whidbey Island home. The evidence in the record supports the award and the trial court did not abuse its discretion.

Affirmed.

WE CONCUR: