# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| In re Matter of the Marriage of: | No. 52756-1-II |
| LILA F. SCHOLL, | |
| Appellant, | |
| v. | |
| LEE W. SCHOLL, | UNPUBLISHED OPINION |
| Respondent. | |

GLASGOW, J.—In July 2018, the superior court modified Lee W. Scholl's spousal maintenance obligation to his ex-wife Lila F. Scholl, finding that Lee[1] had experienced a substantial change in circumstances affecting his ability to pay spousal maintenance.

Lila appeals from the superior court's modification, arguing that the court erred by finding a substantial change in circumstances and abused its discretion by reducing Lee's maintenance obligation. Lila also argues that the superior court erred by declining to award her attorney fees.

We hold that substantial evidence supports the superior court's finding that Lee's income substantially decreased, constituting a substantial change in circumstances. The superior court did not abuse its discretion by adjusting Lee's maintenance obligation and did not err by denying Lila's request for attorney fees. We affirm.

---

[1] Because the parties have the same last name, we refer to them by their first names for clarity.

FACTS

In September 2017, the Pierce County Superior Court entered a dissolution decree ending Lila and Lee's marriage. The couple had no dependent children.

Lila requested spousal maintenance from Lee. At that time, Lee worked as a chief engineer with Blue North Fisheries. The superior court found that Lee's net monthly income was $10,658. The superior court found that Lila was retired after 40 years working for the armed forces, involuntarily unemployed due to serious health issues, and unlikely to obtain future work. The court found that her net monthly income was $4,397.

The superior court ordered Lee to pay Lila maintenance of $3,000 per month. The court explained that it intended to equalize the parties' standards of living, and the dissolution decree provided for an overall equal distribution of debts and assets.

In December 2017, Lee lost his job with Blue North Fisheries. By February 2018, Lee was still unemployed, and his only source of income was weekly unemployment benefits. Lee filed a motion to suspend his spousal maintenance obligation.

In March 2018, a superior court commissioner granted Lee's motion. The commissioner's order required Lee to notify Lila of any subsequent reemployment.

In April 2018, Lee obtained a job as a chief engineer with a maritime freight handling company called Young Brothers Ltd., based in Hawaii. Lee began receiving income from this job in April 2018, but he did not report it until July 2018.

At a review hearing in July 2018, the commissioner found that Lee failed to timely notify Lila of his new employment. The commissioner ordered Lee to pay Lila $3,000 in maintenance for the month of April 2018. The commissioner also ordered Lee to pay Lila 40 percent of his

gross monthly overtime wages (up to $3,000 per month) from any overtime he earned between May and September 2018. The commissioner set a review hearing for the fall to review Lee's actual income for May through September.

Lee's contract with Young Brothers provided for a base pay rate of $33.61 per hour. Lee was paid an overtime rate of $50.42 per hour for any additional hours above full time that he worked. Under the contract, Lee earned one day of paid accrued time off for each day he worked at sea. Lee's contract required him to work a rotating schedule, which meant he worked and was paid for six weeks at a time, and then had six weeks off, during which he could use any accrued time off.

Lee's net monthly take home pay was approximately $4,300. Lee had no guarantee that he would be able to work overtime.

At a review hearing in October 2018, the commissioner concluded that there had been no significant change in circumstances regarding Lee's income and reinstated Lee's $3,000 per month spousal maintenance obligation, retroactive to May 1, 2018.

Lee filed a motion for superior court revision of the commissioner's October 2018 ruling, requesting that the court find that his employment with Young Brothers was a "'significant change of circumstances'" affecting his ability to pay spousal maintenance. Clerk's Papers (CP) at 197-98. Lee asked the superior court to eliminate his monthly $3,000 maintenance obligation and replace it with a requirement that he pay Lila 40 percent of any gross overtime earnings each month.

The superior court granted Lee's motion for revision and required Lee to pay Lila "40 [percent] of his overtime pay" on a monthly basis, effective back to May 1, 2018. CP at 214-15.

No. 52756-1-II

Lila appeals the superior court's orders granting revision and denying reconsideration.

ANALYSIS

A.      Modification of Spousal Maintenance and Standard of Review

RCW 26.09.170(1)(b) provides that a spousal maintenance order may be modified "except as otherwise provided in this section, only upon a showing of a substantial change of circumstances." Although the statute does not define "substantial change of circumstances," that term has been defined by case law. *See, e.g.*, *Spreen v. Spreen*, 107 Wn. App. 341, 346, 28 P.3d 769 (2001).

"'[T]he phrase "change in circumstances" refers to the financial ability of the obligor spouse to pay vis-à-vis the necessities of the other spouse.'" *Id*. (quoting *In re Marriage of Ochsner*, 47 Wn. App. 520, 524, 736 P.2d 292 (1987)). A substantial change in circumstances is a change that was "not contemplated at the time the original order [of support] was entered." *In re Marriage of Morris*, 176 Wn. App. 893, 902, 309 P.3d 767 (2013). The moving party has the burden of showing that a substantial change has occurred.  *Spreen*, 107 Wn. App. at 346.

We review spousal support modifications for abuse of discretion. *Id.* The spouse challenging the modification has the burden of showing abuse of discretion. *See id*. Abuse of discretion "'occurs when a decision is manifestly unreasonable or based on untenable grounds or untenable reasons.'" *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014) (quoting *In re Marriage of Katare*, 175 Wn.2d 23, 35, 283 P.3d 546 (2012)). A trial court's decision is unreasonable or untenable "'if it rests on facts unsupported in the record or was reached by applying the wrong legal standard.'" *Hoffman v. Kittitas County*, 194 Wn.2d 217, 229, 449 P.3d 277 (2019) (quoting *State v. Rohrich*, 149 Wn.2d 647, 654, 71 P.3d 638 (2003)). We treat the trial

4

court's findings of fact "as verities on appeal" so long as those findings are "supported by substantial evidence." *Chandola*, 180 Wn.2d at 642.

"'Substantial evidence' is evidence sufficient to persuade a fair-minded person of the truth of the matter asserted." *Id.* We "defer[] to the trier of fact for purposes of resolving conflicting testimony and evaluating the persuasiveness of the evidence and credibility of the witnesses." *Thompson v. Hanson*, 142 Wn. App. 53, 60, 174 P.3d 120 (2007). We cannot "reweigh or rebalance competing testimony and inferences even if we may have resolved the factual dispute differently." *Bale v. Allison*, 173 Wn. App. 435, 458, 294 P.3d 789 (2013). If evidence is disputed, it will nonetheless be substantial if the evidence is sufficient to persuade a reasonable person of its truth. *See McCleary v. State*, 173 Wn.2d 477, 514, 269 P.3d 227 (2012).

When the superior court has revised a commissioner's maintenance modification ruling, "the superior court revision order supersedes the commissioner's ruling[,] [and] our focus is whether the superior court abused its discretionary authority." *In re Marriage of Dodd*, 120 Wn. App. 638, 644, 86 P.3d 801 (2004).

B.     Substantial Change in Circumstances

Lila argues that the superior court abused its discretion by finding that Lee experienced a substantial change in circumstances that affected his ability to pay spousal maintenance. We disagree and hold that Lee offered substantial evidence sufficient to persuade a fair-minded person that he experienced a substantial change in circumstances warranting modification under RCW 26.09.170(1)(b).

Lee presented evidence that his net take home base pay in November 2018—not including any overtime he might end up working—was approximately $4,300 per month.[2] Lee acknowledged that he received an additional amount of approximately $227 per month from Lila's Federal Employee's Retirement System annuity. If it counted the money he received from Lila's annuity, the superior court could rationally have found that Lee's net monthly base income in November 2018 did not exceed roughly $4,500, which was less than half of his net monthly income in September 2017.

Lee also presented evidence to the superior court explaining how his wages with Young Brothers represented a substantial decrease in income when compared to his prior income with Blue North Fisheries, even though his paystubs for that period did not at first glance appear to reflect that decrease. Lee was able to take two additional voyages in the summer of 2018, which "allowed [him] to get some extra hours without having the six weeks off that [he] normally would have faced." CP at 187. These additional voyages were exceptional opportunities rather than regular occurrences, and Lee had no way of knowing whether he would be able to work overtime hours in the future.

Lee explained to the superior court that his "six weeks on, six weeks off" schedule with Young Brothers also represented a change in the way he was paid. CP at 186. He emphasized, "I have to save the . . . accrued time off earned only on sea voyage not while at dock and use that money in lieu of [a] paycheck during the six weeks off." CP at 186.

---

[2] The $4,300 per month approximation of Lee's base pay appears to assume full time employment at his new hourly rate of pay. Lee's paystubs during this period also contained a number of clerical and typographical errors, including an error that resulted in him being accidentally overpaid $3,092.12. This amount was ultimately deducted from Lee's later paychecks.

Lila presented contradictory evidence to support her argument that Lee's income did not substantially decrease from his roughly $10,000 net monthly income that the superior court found in September 2017. Lila included in her calculation of Lee's net monthly income both his guaranteed full-time hourly wages *and* the extraordinary overtime wages he earned during that six-month period.

Lila's contradictory evidence does not establish that the superior court abused its discretion by adopting Lee's arguments and calculations instead of Lila's. We do not "'disturb findings of fact supported by substantial evidence even if there is conflicting evidence.'" *McCleary*, 173 Wn.2d at 514 (quoting *Merriman v. Cokeley*, 168 Wn.2d 627, 631, 230 P.3d 162 (2010) (per curiam)). Even if we might resolve this factual dispute differently than the superior court, we are not entitled to reweigh the evidence. *Bale*, 173 Wn. App. at 458.

Under RCW 26.09.170(1)(b), Lee offered evidence sufficient for the superior court to conclude that he experienced a substantial change in circumstances that justified modifying his maintenance award. We hold that the superior court did not abuse its discretion in this regard.

C.      Scope of the Initial Maintenance Order

Lila argues that Lee's termination from Blue North Fisheries and reemployment with Young Brothers was not a significant change in circumstances because the superior court's initial maintenance order contemplated this change. Lila argues that Lee experienced a "lateral change" within the same industry at "comparable earnings." Br. of Appellant at 12. We reject this argument and hold that Lee's change in employment was a substantial change in circumstances not contemplated by the parties at the time of the initial dissolution decree.

Under RCW 26.09.170(1)(b), a change in circumstances affecting the obligor spouse's ability to pay maintenance must have been a change "that the parties did not contemplate at the time of the dissolution decree." *Spreen*, 107 Wn. App. at 346. We review for abuse of discretion the superior court's determination that a change in circumstances under RCW 26.09.170(1) was not previously contemplated. *See id.*

In its initial maintenance award in 2017, the superior court expressly stated that if Lee's "ability to work becomes substantially impaired at a future date," it might modify the maintenance award, "*but that speculative action cannot be considered at this time.*" CP at 37 (emphasis added).

We hold that Lee's change in employment and reduction in guaranteed base pay was not contemplated when maintenance was originally ordered.

D.     Consideration of RCW 26.09.090(1)(f) and Abuse of Discretion

Lila argues that the superior court did not adequately consider Lee's ability to pay spousal maintenance in relation to Lila's financial need as required by RCW 26.09.090(1)(f). Lila also contends that the superior court abused its discretion by failing to provide specific findings of fact or present findings showing how its November 2018 order "equalize[d] the income of the parties." Br. of Appellant at 15.  We disagree.

To modify a maintenance obligation, the court considers the same nonexclusive factors in RCW 26.09.090(1)(a)-(f) that apply to the determination of an initial maintenance obligation.  *See, e.g.*, *Spreen*, 107 Wn. App. at 347 n.4. "An award that does not evidence a fair consideration of the statutory factors" is an abuse of discretion. *Id.* at 349. However, "[n]othing in RCW 26.09.090 requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1)." *Mansour v. Mansour*, 126 Wn. App. 1, 16, 106 P.3d 768 (2004). In *Mansour*, we

held that a trial court's "failure to list the influence of each factor in its ruling" did not warrant "reversing the maintenance award for lack of consideration of the listed factors." *Id.*

Contrary to Lila's assertion, the superior court was not required to make factual findings showing how it balanced Lee's ability to pay in relation to Lila's need. *See id.* And the superior court did address RCW 26.09.090(1)(f). At the court's request, both parties discussed Lee's ability to pay relative to Lila's need. After hearing evidence and arguments from both sides, the superior court explicitly stated that it was ruling in Lee's favor and adopting his calculations.

With regard to both Lee's net monthly income and Lila's financial need, the parties submitted contradictory evidence. Deferring to the superior court's resolution of competing evidence, we hold that the superior court did not err by finding that Lee's and Lila's base incomes were roughly equal and that the best way to satisfy RCW 26.09.090(1)(f) was to award to Lila 40 percent of Lee's overtime wages.

With regard to Lila's argument that the superior court never explained how its modification equalized the parties' income, the court's division achieved a roughly equal split of Lee's net overtime income because it accounted for Lee's payment of taxes on his income.[3]

We hold that the superior court did not violate RCW 26.09.090(1)(f) or otherwise abuse its discretion by modifying Lee's spousal maintenance obligation.

E.      Superior Court's Denial of Lila's Request for Attorney Fees

Lila argues that the superior court erred under RCW 26.09.140 when it denied her request for attorney fees. We disagree.

---

[3] We note that in his July 30, 2018 order, the commissioner also awarded Lila 40 percent of Lee's gross overtime wages for the time period when Lee's employment status was stabilizing.

Under RCW 26.09.140, a trial court may, "after considering the financial resources of both parties," award fees and costs to one party. We review "statutory attorney fee award decisions for an abuse of discretion." *In re Marriage of Coy*, 160 Wn. App. 797, 807, 248 P.3d 1101 (2011). We defer to the trial court unless its decision was "based on untenable grounds or untenable reasons." *Id.* RCW 26.09.140 instructs the court to balance the parties' financial need "'to make certain [no person] is . . . deprived of [their] day in court [due to] financial disadvantage.'" *In re Marriage of Burke*, 96 Wn. App. 474, 479, 980 P.2d 265 (1999) (quoting 20 KENNETH W. WEBER, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 40.2, at 510 (1997)).

Under RCW 26.09.140, the superior court could reasonably have concluded that neither Lila's nor Lee's financial need substantially outweighed the other's. The superior court's final dissolution decree, as well as its initial and modified maintenance award, contemplated an equal division of debts, assets, and income, reinforcing that neither party had substantially greater financial need than the other.

We hold that the superior court did not err by denying Lila's request for attorney fees.

F.       Attorney Fees on Appeal[4]

On appeal, Lila requests attorney fees under RCW 26.09.140. We deny her request.

Under RCW 26.09.140, we have discretion to award reasonable costs and attorney fees to either party on appeal "after considering the financial resources of both parties." We balance "the financial need of the requesting party against the other party's ability to pay." *In re Marriage of*

---

[4] Lila filed a financial affidavit in support of her request for attorney fees that included a declaration containing biographical information and additional argument. Lee responded with a motion to strike the declaration under RAP 18.1(c) and 10.1(b) and a motion for sanctions. We grant Lee's motion to strike but we decline to award sanctions. We did not consider the stricken declaration.

No. 52756-1-II

*Kim*, 179 Wn. App. 232, 256, 317 P.3d 555 (2014). For the same reasons the superior court did not err by denying Lila's request for attorney fees, we deny Lila's request for attorney fees on appeal.

CONCLUSION

We affirm the superior court's modification of Lee's spousal maintenance obligation and its denial of attorney fees. We decline to award attorney fees to Lila on appeal.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Glasgow, J.

We concur:

Maxa, P.J.

Sutton, J.

11