IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 80693-9-I |
| GEORGE KHAZEM SLYMAN, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | UNPUBLISHED OPINION |
| | ) | |
| DIANA SUE SLYMAN, | ) | |
| | ) | |
| Appellant. | ) | |

BOWMAN, J. — Diana Slyman argues the trial court abused its discretion by granting a reduction in her spousal maintenance. We conclude that the trial court's order reducing maintenance was equitable in light of all relevant factors. We affirm.

FACTS

In 2017, Diana[1] and George Slyman divorced after almost 31 years of marriage. They raised three children to adulthood, one with lifelong medical complications who still resides with Diana.

During the marriage, George was the sole income provider while Diana left her career as a CPA[2] to work in the household. George worked for ABB Enterprise Software Inc. (ABB) for around 20 years and rose to a senior vice

---

[1] For clarity, we refer to each party by first name. We intend no disrespect.

[2] Certified public accountant.

Citations and pin cites are based on the Westlaw online version of the cited material.

president level. He earned a gross income of about $20,600 per month with a discretionary yearly bonus of up to 50 percent of his salary.

The parties agreed to divide their assets equally. They awarded Diana the unencumbered family home valued at about $493,000 and around $400,000 in retirement and cash assets, while George retained the bulk of the liquid assets. The parties also agreed that George would pay Diana maintenance in the amount of $6,000 per month for five years until his 60th birthday. He would then pay Diana $3,000 per month for seven years until his 67th birthday. The parties designed the agreement to provide equal financial footing until they both reached retirement age and could access retirement funds without penalty.

Shortly after the parties entered the final dissolution decree, ABB eliminated George's position. He received a severance package, including wages for 43 weeks and payouts for accrued vacation and paid time off. George continued to pay maintenance at $6,000 per month while he searched for a new job. About 2 weeks after George's 43-week severance package ended, George accepted a position as director of professional services at CentralSquare Technologies. The new position paid a salary of about $16,250 per month with a discretionary yearly bonus of up to 20 percent of his salary.

George petitioned the court to modify the maintenance, arguing that his reduced income was an unanticipated substantial change in circumstances that left him unable to satisfy the maintenance payment and pay his expenses. Diana acknowledged the change in George's circumstances but opposed the modification. She argued that she could not pay her expenses without the agreed rate of maintenance and that she could not earn an income. She

2

asserted that she is unemployable because her CPA license is no longer valid and she would have to undertake substantial education and retraining in order to reenter that field.  She also claimed that she would be unable to find a job because she suffers from alcohol use disorder and other medical issues that limit her appeal to potential employers.  Finally, Diana argued that she could not work because she needed to be present in her home to care for her adult daughter.

The court determined that George's change in employment was a substantial change in circumstances and set the case for trial to determine whether it warranted a modification in maintenance.  At trial, the court heard testimony and considered financial declarations from both parties.  After trial, the court issued written findings of fact and conclusions of law.  It concluded that Diana was still in need of maintenance but that a modification downward was appropriate given the reduction in George's income by "about half."  The court reduced maintenance to $3,000 per month until George turned 60 years old and then $1,500 per month until his 67th birthday.  The court applied the reduction in maintenance retroactively to March 2019, the date George found new employment and filed the modification petition.

Diana appeals.

ANALYSIS

Modification of Maintenance

Diana does not dispute that George's salary reduction amounts to an unanticipated substantial change in circumstances.  But she challenges the trial court's finding that George's income was reduced by "about half" as not supported by substantial evidence.  And she argues that the trial court abused its

discretion by reducing maintenance to an arbitrary and unjust amount. We disagree.

A trial court has considerable discretion over the amount and duration of a maintenance award. In re Marriage of Luckey, 73 Wn. App. 201, 209, 868 P.2d 189 (1994). A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or reasons. In re Marriage of Littlefield, 133 Wn.2d 39, 46-47, 940 P.2d 1362 (1997). In awarding maintenance, the trial court must consider the following nonexclusive statutory factors:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage . . . ;
> (d) The duration of the marriage . . . ;
> (e) The age, physical and emotional condition, and financial obligations of the spouse . . . seeking maintenance; and
> (f) The ability of the spouse . . . from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse . . . seeking maintenance.

RCW 26.09.090(1).

A maintenance award that does not evidence a fair consideration of the statutory factors results from an abuse of discretion. In re Marriage of Mathews, 70 Wn. App. 116, 123, 853 P.2d 462 (1993). But "[n]othing in [the statute] requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1)." In re Marriage of Mansour, 126 Wn. App. 1, 16,

4

106 P.3d 768 (2004). The only limitation on a maintenance award is that "the amount and duration, in light of all the relevant factors, be just." In re Marriage of Spreen, 107 Wn. App. 341, 347-48, 28 P.3d 769 (2001) (citing In re Marriage of Washburn, 101 Wn.2d 168, 178, 677 P.2d 152 (1984)).

A court may modify a maintenance award when the moving party shows a "substantial change" in circumstances that the parties did not contemplate at the time of the dissolution decree. Wagner v. Wagner, 95 Wn.2d 94, 98, 621 P.2d 1279 (1980); see RCW 26.09.170(1)(b). When a court determines that changed circumstances warrant a modification of maintenance, "the issues of amount and duration are the same as in the original dissolution." Spreen, 107 Wn. App. at 347 n.4. We review a trial court's ruling on a petition to modify spousal maintenance for an abuse of discretion. In re Marriage of Drlik, 121 Wn. App. 269, 274, 87 P.3d 1192 (2004).

In determining whether the trial court abused its discretion in modifying a maintenance award, we review the court's findings of fact for substantial supporting evidence and for legal error. In re Marriage of Stern, 68 Wn. App. 922, 929, 846 P.2d 1387 (1993). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." Bering v. SHARE, 106 Wn.2d 212, 220, 721 P.2d 918 (1986). In determining whether substantial evidence supports a trial court's finding of fact, we review the record in a light most favorable to the party in whose favor the findings were entered—here, George. In re Marriage of Gillespie, 89 Wn. App. 390, 404, 948 P.2d 1338 (1997).

The evidence at trial showed that while employed at ABB, George averaged a base salary of $247,608 per year with the potential to earn up to a 50 percent bonus. His gross income ranged from $284,249 in 2015 to $335,302 in 2017. George's 2018 income of $444,826 was much higher because he received severance payments and payouts for accrued vacation and business expenses. At CentralSquare Technologies, George earned a base salary of $195,000 per year with the potential to earn up to a 20 percent bonus.

George argued to the court that his reduction in salary from 2018 to 2019 was "about a 51/52 percent decrease" in his income. Diana argued that the "51 percent reduction is kind of a misrepresentation of the numbers because there also was a huge severance in [2018]." The trial court noted Diana's argument and found that George "received severance and some cash payouts upon his termination from ABB Software in 2018." The court also found that "[i]n his current employment [George] may be able to earn up to a 20 [percent] bonus, but he has not received that bonus yet." The court then found that George's income "has decreased by about half from his prior salary to his current salary, which is $195,000." Viewing the record in a light most favorable to George, we conclude that substantial evidence supports the trial court's finding that his income decreased by "about" half.

Diana next argues the trial court abused its decision when it reduced maintenance by 50 percent because the decision was "arbitrary," "inequitable," and "unjust." Diana cites Spreen, 107 Wn. App. at 341, in support of her argument. In that case, the court granted a motion to modify maintenance issued after a 17-year marriage because of the wife's worsening mental health issues.

6

Spreen, 107 Wn. App. at 344-45. The court considered the factors under RCW 26.09.090(1) but then determined that one additional year of maintenance was "all that [the wife] was 'entitled to.' " Spreen, 107 Wn. App. at 348. In reaching its decision, the trial court ignored medical testimony that the wife "would be unable to work for at least 18 months to [2] years" and noted the "availability of government assistance" as an option to meet her needs. Spreen, 107 Wn. App. at 349. We concluded that the trial court erred in limiting maintenance to one year because the time limit contradicted the evidence at trial and inappropriately relied on "social services or charity" as a factor under RCW 26.09.090(1). Spreen, 107 Wn. App. at 349-50.

Unlike Spreen, the record here shows that the trial court appropriately considered all of the relevant statutory factors when determining modified maintenance. At trial, the court heard evidence about the parties' respective financial situations, the duration of the marriage, Diana's physical and emotional condition, her ability to find employment, and George's ability to pay as well as the division of marital assets. Testimony established that the parties agreed to award Diana their unencumbered family home valued at $493,000 and about $400,000 in retirement and cash assets at the time of dissolution. Evidence at trial also showed that Diana inflated monthly expenses in her initial financial declaration by almost $3,000. Her amended financial declaration reflected expenses exceeding her monthly income by about $350 per month. Yet she also acknowledged she had contributed $500 to her retirement fund each month since her dissolution.

The trial court weighed the evidence and concluded that Diana "continues to need maintenance and will likely need maintenance until she reaches retirement age," but that "maintaining maintenance at its current level would be inequitable" given George's reduction in income. The court rejected George's assertion that he had the ability to pay only $2,000 per month and instead determined that a tiered reduction to $3,000 per month and then $1,500 per month would "achieve equity between the parties." Diana fails to show that the trial court's modification of maintenance was arbitrary, inequitable, or unjust.

Attorney Fees

Diana requests attorney fees on appeal. We may order a party to pay the other party's attorney fees and costs associated with the appeal of a dissolution action under RCW 26.09.140.[3] In exercising our discretion, we consider the arguable merit of the issues on appeal and the parties' financial resources. In re Marriage of King, 66 Wn. App. 134, 139, 831 P.2d 1094 (1992). In considering the financial resources of both parties, we balance the needs of the requesting party against the other party's ability to pay. In re Marriage of Trichak, 72 Wn. App. 21, 26, 863 P.2d 585 (1993). Based on the record below, we conclude that "[e]ach party is financially able to pay his or her attorney and neither would be

---

[3] RCW 26.09.140 provides, in pertinent part:

The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorneys' fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.

under a critical hardship to do so." In re Marriage of Wilson, 117 Wn. App. 40, 51, 68 P.3d 1121 (2003).

We conclude that the trial court's order reducing maintenance was equitable in light of all the relevant factors. We affirm.

_____
Brennan, J

WE CONCUR:

_____                    _____
Chun, J.                                            Verellen, J